772 P.2d 242

**Bill GILBERT and M. Maxine Gilbert, husband and wife, Plaintiffs–Appellants,**

v.

**TONY RUSSELL CONSTRUCTION, a foreign corporation authorized to do business within the State of Idaho, Defendant–Respondent.**

No. 17197.

Court of Appeals of Idaho.

April 6, 1989.

Ronald P. Rainey, Alexanderson, Davis, Rainey, Whitney & Kerrick, Caldwell, for plaintiffs-appellants.

Paul S. Penland and Richard C. Boardman, argued, Penland & Munther, Boise, for defendant-respondent.

WALTERS, Chief Judge.

This appeal involves a dispute over an award of damages for breach of a construction contract. The appellants, Bill and Marie Gilbert, argue that the district court—in its order on remand from a previous decision of this Court—did not properly determine the amount of damages resulting from breach of a contract for the construction of a sewer line across the Gilbert's property. The Gilberts raise the following issues on appeal. First, they contend that the district court failed to apply the correct measure of damages for breach of the construction contract. Second, they assert that the district court should have considered federal standards for the construction of gas lines in determining the amount of damages. Third, the Gilberts maintain that the costs they incurred in conducting soil compaction tests after installation of the sewer line were consequential damages of the contract breach. Finally, the Gilberts assert that they are entitled to additional damages because the contractor failed to complete the construction on time. We vacate that portion of the district court's order dealing with the measure of damages, but affirm all other findings included in the order. We remand this case to the district court for a redetermination of the Gilberts' damages.

The facts of this case are detailed in our first opinion dealing with this action. *Gilbert v. City of Caldwell*, 112 Idaho 386, 732 P.2d 355 (Ct.App.1987) (*Gilbert I*). These facts can be summarized as follows. The Gilberts granted the City of Caldwell (City) an easement across their commercial property to permit the City to install a new sewer line. The City contracted with the respondent, Tony Russell Construction (TRC), to perform the construction project (TRC–City contract). The TRC–City contract provided, among other things, for compaction of the backfill material around and over the sewer line to specific minimum standards. Because the Gilberts were concerned that the construction would interfere with ongoing businesses located on their property, the TRC–City contract also contained a provision limiting construction to nonbusiness hours during a nine-day period.

After the project began, TRC realized that construction during nonbusiness hours was impractical. TRC and the Gilberts entered into a separate agreement (TRC–Gilbert contract) whereby the Gilberts permitted TRC to conduct construction during business hours in exchange for TRC paying the Gilberts a daily fee to compensate their commercial tenants for lost business.

After the sewer line had been installed, the Gilberts noticed subsidence in the construction area. Tests conducted on the backfill material disclosed compaction levels below the minimum standards outlined in the TRC–City contract. The Gilberts sued the City and TRC contending that, because of the subsidence, the value of their property had been diminished. The Gilberts also raised an independent claim against TRC for failure to complete the construction within the nine-day period provided under the TRC–City contract. The Gilberts sought approximately $111,000 in damages for these alleged breaches of the contracts.

Following trial without a jury, the district court found TRC liable for deficiencies in the backfill condition. In addition, TRC and the City were found jointly and severally liable for interruption of business. The district court awarded the Gilberts $4989 for defective construction and $2000 for construction beyond the time period stated in the TRC–Gilbert contract. The Gilberts appealed to this Court, maintaining that the damage awards were inadequate.

In *Gilbert I*, we held that the district court failed to utilize the appropriate method of measuring damages for breach of the TRC–City contract. 112 Idaho at 396, 732 P.2d at 365. We remanded the case to the

district court for a redetermination of damages in light of the issues discussed in our opinion. We also directed the district court to consider in its damages assessment evidence regarding the federal gas line standards, the soil compaction tests, and the penalty assessed against TRC for failing to complete the construction on time. *Id.* at 396–97, 732 P.2d at 365–66. On remand, the district court amended its original judgment to reflect some of the changes suggested in *Gilbert I*, but the district court ultimately concluded that the evidence adduced at trial did not warrant a change in the method of determining the Gilberts' damages as a result of the contract breach. This appeal followed.[1]

## Standard of Review

In this appeal we must determine whether the district court's findings in its order on remand are consistent with our opinion in *Gilbert I*. Generally, findings of fact by a trial court will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Our standard for reviewing a trial court's findings and conclusions is to determine whether the findings of fact are supported by substantial, competent evidence, and to determine whether the trial court properly applied the law to the facts as found. *Bischoff v. Quong–Watkins Properties*, 113 Idaho 826, 748 P.2d 410 (Ct.App. 1987). In this case, the district court took no further evidence on remand pertaining to the questions raised by this Court in *Gilbert I*. Therefore, our task is to determine whether the trial court's findings of fact in its order on remand are supported by substantial and competent evidence elicited at trial, and whether the district court properly applied the law as announced in *Gilbert I* to the facts thus found.

## Measure of Damages

■ We first address the Gilberts' claim regarding the appropriate measure of damages. The Gilberts contend that the district court's decision on remand—reiterat-

ing its previous award of damages—was inconsistent with *Gilbert I*, and not supported by substantial and competent evidence. The Gilberts maintain that they are entitled to the full cost of repair of the faulty construction. To the contrary, TRC argues to uphold the district court because the evidence introduced at trial demonstrated that the full cost of repairs was economically wasteful.

Some additional background information is necessary to understand the parties' arguments on this issue. During trial, the Gilberts claimed that the TRC–City contract required strict compliance with the minimum standards for compacting the backfill material around and over the sewer line. The Gilberts contended that, based upon TRC's failure to meet these minimum standards, they were entitled to the full cost of excavating and recompacting the backfill material in compliance with the contract specifications. The Gilberts introduced evidence at trial of the cost to recompact the backfill material. In addition, the Gilberts attempted to introduce evidence of the loss in value to their commercial property suffered as a result of the subsidence problems. This evidence was offered to contradict any assertion by the defendants that the costs of repair would far outweigh the Gilberts' loss in property value. The defendants objected to the admission of this evidence, stating that "economic waste" was not an issue in determining damages. The objection was sustained by the district court. The district court thereafter based its award of damages upon the defendants' estimate of the cost of repair, even though this estimate was not sufficient to bring the compaction levels into full compliance with the minimum standards provided for in the TRC–City contract.

On appeal in *Gilbert I*, we discussed the evolution of language in the RESTATEMENT (FIRST) OF CONTRACTS (1932) and RESTATEMENT (SECOND) OF CONTRACTS (1981) concerning the proper mea-

---

**1.** The City was dismissed from this action, during the present appeal, by stipulation of the parties.

sure of damages for breach of a contract involving property. 112 Idaho at 393–95, 732 P.2d at 362–64. Under § 347 of the SECOND RESTATEMENT, we stated that the loss-in-value to the injured party's property is the ordinary measure of damages for such a breach.[2] *Id.*, at 394, 732 P.2d at 363. However, we noted that the Gilberts had not resorted to the loss-in-value measure in claiming damages. *Id.* at 395, 732 P.2d at 364. This decision appears to be due, in some part, to the nature of the TRC–City contract. This contract was not intended primarily to create a "value" for the Gilberts. The Gilberts were simply allowing a sewer line to cross their property. Although this might produce some benefit, the real thrust of the TRC–City contract was to assure that the Gilberts would not suffer any detriment to their property during construction of the sewer line. Accordingly, the Gilberts' damage resulting from breach of this contract was not the loss of any increased value in the property; rather, the loss was a reduction in the existing value of the property. As we stated, this type of loss is compensable as provided in § 348(2) of the SECOND RESTATEMENT, which states:

> (2) If a breach results in defective or unfinished construction and the loss in value to the injured party is not proved with sufficient certainty, he may recover damages based on
> (a) the diminution in the market price of the property caused by the breach, or
> (b) the reasonable cost of completing performance or of remedying the defects if that cost is not clearly disproportionate to the probable loss in value to [the injured party].

RESTATEMENT (SECOND) OF CONTRACTS § 348(2) (1981).

Under § 348(2), the injured party is entitled to choose between recovery under subsection (a) or (b). However, if he seeks the second measure—"the reasonable cost of completing performance or of remedying the defects"—he may receive it only "if that cost is not clearly disproportionate to the probable loss...." *Id.* This right to choose the remedy, so long as it does not result in a clearly disproportionate recovery, protects the injured party's expectation interest in the contract as denoted in § 347. That interest is impermissibly abridged if a judge awards a sum less than the "reasonable cost of completing performance or of remedying the defects" while at the same time refusing to allow recovery of damages based on "the diminution in the market price of the property caused by the breach." *Id.*

In *Gilbert I,* we concluded that the damages in this case should be based upon the cost-of-repair measure. *See* 112 Idaho at 394–95, 732 P.2d at 363–64. We further noted that such a measure of damages should ordinarily reflect a method of repair *"in strict or full compliance with the terms of the contract* [emphasis added]." *Id.* Our test under this standard was stated in the opinion as follows:

> [a]lthough a less costly alternative may be appropriate in some cases, we are convinced it should not be the measure of damages unless it has been shown that the ordinary measure would be disproportionate to the loss in value or to the benefits of full repair, i.e. economically wasteful or result in a windfall to the injured party. *See* FIRST RESTATEMENT § 346; SECOND RESTATEMENT § 348(2).

*Id.*, at 395–96, 732 P.2d at 364–65. Based upon our review, we concluded that the trial record did not yield a finding of economic waste or disproportionality. *Id.*, at 396, 732 P.2d at 365. We therefore remanded the case back to the district court to determine if such evidence did in fact exist. *Id.* In doing so, we suggested that

---

**2.** Section 347, in pertinent part, states:
[T]he injured party has a right to damages based on his expectation interest as measured by
(a) the loss in value to him of the other party's performance caused by its failure or deficiency, plus

(b) any other loss, including incidental or consequential loss, caused by the breach, less
(c) any cost or other loss that he has avoided by not having to perform.
RESTATEMENT (SECOND) OF CONTRACTS § 347 (1981).

the district court, *"may* take additional argument and evidence as deemed necessary to determine the appropriate measure of damages [emphasis added]." *Id.*

On remand, the district court declined to consider additional evidence. Instead, the court concluded, based upon the original record, that:

> The evidence at trial supports the conclusion that the measure of damages asserted by the plaintiff would be disproportionate to any loss in value to the plaintiff's property as well as to any benefit to plaintiff's property from completely reexcavating and refilling the sewer line. This Court deems that it did impliedly, if not explicitly, conclude that the less costly approach of the defendant, Tony Russell Construction, Inc., was more appropriate under the evidence adduced at trial. The Court adheres to that view.

▮ We disagree with the district court's conclusion. As we stated in *Gilbert I,* the evidence adduced at trial did not conclusively show that the Gilbert's measure of damages was disproportionate or economically wasteful. On remand, we invited the district court to take additional argument and evidence to determine whether such a situation did exist. However, the district court decided that, based upon the record before it, the Gilberts' estimate of repairs was disproportionate to the benefits they would receive. Because the district court decided not to consider additional evidence in its consideration of the Gilberts' damages, we fail to see how the court could make this determination based upon the lack of evidence of disproportionately adduced at trial. However, with due respect to the learned district judge, we believe that our opinion in *Gilbert I* may have created some confusion over the proper method of determining damages in this case. Our use of discretionary language in reference to the taking of additional evidence on remand may have led the district

court to believe that it could apply the cost-of-repair measure of damages, as outlined in § 348(2)(b), without considering evidence of disproportionality. To the contrary, such a finding is mandatory in determining whether a party is entitled to these damages.[3] Because of the ambiguity in our directions in *Gilbert I,* the district court must be given an opportunity to reevaluate the evidence in light of our conclusion. *Bergkamp v. Martin,* 114 Idaho 650, 759 P.2d 941 (Ct.App.1988). We therefore vacate that portion of the district court's order on remand dealing with the measure of damages. We remand this case to the district court for a determination of damages consistent with this opinion. We direct the district court to take additional evidence to determine whether the cost of repairing the sewer line trench, in full compliance with the terms of the TRC–City contract, is disproportionate to the diminution in the value of the Gilberts' property. If so, the court should award the Gilberts diminution-in-value damages, as specified in § 348(2)(a). If not, the court should award the Gilberts the cost of repairing the sewer line trench in full compliance with the TRC–City contract specifications, as outlined in § 348(2)(b).

### *Federal Gas Line Standards*

▮ Next we address Gilberts' claim concerning the federal gas line compaction standards. 49 C.F.R. § 192.301 *et seq.* (1981) (Standards). The Gilberts argue that the Standards are relevant in illustrating the potential hazard which existed because of TRC's failure to adequately support a gas line which crosses the sewer line trench. The Gilberts contend that without adhering to these Standards, natural settling of the backfill below the gas line could cause the line to break at a weld joint or seam, resulting in further damage to the Gilberts' property. In *Gilbert I,* we directed the trial court to consider whether these

---

**3.** TRC contends that the trial record contains sufficient evidence to support the district court's conclusion on remand. TRC points out that, based upon the expert testimony of both parties, the district court properly found that any defects in the construction were of a minor nature

and could be adequately compensated for without complete reconstruction. However, TRC fails to point out any evidence which indicates that the cost of complete repair was economically wasteful or disproportionate to the benefits gained by reconstruction.

Standards were relevant to the cost-of-repair measure of damages. *Gilbert I,* 112 Idaho at 396, 732 P.2d at 365. On remand, the district court found that the Standards were not relevant to this issue.

We agree with the trial court's conclusion. The Standards deal specifically with construction of gas transmission lines and mains. 49 C.F.R. § 192.301. However, the Standards provide nothing more than general guidelines for protection or installation of gas lines in construction areas.[4] We fail to see how these Standards are relevant to the Gilberts' cost to repair the faulty sewer line construction. We therefore defer to the trial court's judgment on this matter, and hold that the Standards were properly excluded as evidence.

### Soil Compaction Tests

■ We now consider the Gilberts' claim pertaining to the soil compaction tests. The Gilberts maintain that the district court erred by disallowing these items as discretionary costs incurred in anticipation of litigation. I.R.C.P. 54(d)(1)(D). The Gilberts assert that, pursuant to the TRC–City contract, the cost of conducting the soil compaction tests were to be paid by TRC.

Section 5–1.17 of that contract provides, in pertinent part, that:

If the Engineer considers it necessary or advisable that covered work be inspected or tested by others, the Contractor, at the Engineer's request, will uncover, expose or otherwise make available for observation, inspection or testing as the Engineer may require, that portion of the work in question, furnishing all necessary labor, materials, tools, and equipment. If it is found that such work is defective, the Contractor will bear all the expenses of such uncovering, exposure,

observation, inspection and testing and of satisfactory reconstruction. If, however, such work is not found to be defective, the Contractor will be allowed an increase in the contract price or an extension of the contract time, or both, directly attributable to such uncovering, exposure, observation, inspection, testing and reconstruction and an appropriate change order shall be issued.

The Gilberts contend that because the backfill did not meet the contract specifications, TRC bore the burden of paying for the compaction testing. They thus assert that these costs should be treated as consequential damages incident to TRC's breach of the TRC–City contract.

In *Gilbert I,* we noted that the district court had failed to address the Gilberts' claim regarding these costs. We directed the district court to enter findings and conclusions regarding why it had denied these costs in the original action. 112 Idaho at 396, 732 P.2d at 365. On remand, the district court concluded:

The Court finds that the soil compaction testing by the plaintiff was done in preparation for litigation, and that the costs of same were not claimed by the plaintiff as a discretionary cost in his cost memorandum as required by Rule 54(d)(5), I.R. C.P. The Court therefore deems such claim to have been waived.

We see no abuse in the district court's decision. On remand, the district court found that these costs were incurred in anticipation of trial. *Id.* The district court therefore concluded that the Gilberts had lost their right to collect these costs by failing to include them in their memorandum of costs filed in the original action. I.R.C.P. 54(d)(5); *see Harris v. Chapman,*

---

**4.** At the time the sewer line was being installed, 49 C.F.R. § 192.319 (1981) read:

(a) When installed in a ditch, each transmission line that is to be operated at a pressure producing a hoop stress of 20 percent or more of SMYS must be installed so that the pipe fits the ditch so as to minimize stresses and protect the pipe coating from damage.

(b) When a ditch for a transmission line or main is backfilled, it must be backfilled in a manner that—

(1) Provides firm support under the pipe; and

(2) Prevents damage to the pipe and pipe coating from equipment or from the backfill material.

Neither this section nor any other provision of the Standards contain more specific guidelines with respect to providing support for an underground gas line.

51 Idaho 283, 5 P.2d 733 (1931). The district court's decision to deny these costs was one properly within its discretion. *See Operating Engineers Local Union 370 v. Goodwin Construction Co. of Blackfoot*, 104 Idaho 83, 656 P.2d 144 (Ct.App.1982).

■ Nonetheless, the Gilberts contend that, regardless of the omission of the testing costs in their memorandum of costs, the terms of the TRC–City contract provided for compaction testing in the event of defective construction. However, the record is not clear whether the parties mutually agreed to conduct the compaction tests in accordance with the TRC–City contract, or whether the tests were conducted solely to determine the nature and extent of damages in preparation of litigation. Generally, the cost of a survey or test incurred in the preparation of litigation is not recoverable as damages. *Nelson v. Wagner*, 108 Idaho 570, 700 P.2d 973 (Ct. App.1985). As a result, we see no reason to upset the trial court's conclusion. We hold that the costs of compaction testing were properly excluded by the district court.

### TRC–Gilbert Contract

■ Finally, we address the Gilberts' claim to additional damages for TRC's failure to complete the construction project on time. The Gilberts argue that the TRC–Gilbert contract did not replace the provisions of the TRC–City contract which limited construction on the sewer line to a nine-day period. The Gilberts submit that the TRC–Gilbert contract only addressed the compensation which TRC was required to pay the Gilberts for working on the project during business hours. The Gilberts contend that they are also entitled to additional damages for each day that the project exceeded the nine-day period specified in the TRC–City contract. As a result, the Gilberts maintain that, because actual construction took twenty-two days, TRC is liable under the TRC–City contract to pay the Gilberts for the thirteen additional days required to complete the construction project.

In *Gilbert I* we stated that, on its face, the TRC–Gilbert contract permitted construction during business hours—with compensation at the rate of $500 per day—until completion of the project. 112 Idaho at 397, 732 P.2d at 366. We concluded that the contract provided for compensation for each business day—including Saturdays—from the date the parties entered into their agreement, October 26, until the project was completed on November 12. *Id.* However, we noted that, at trial, the district court had not determined whether the TRC–Gilbert contract had superceded the nine-day construction limit provided for in the TRC–City contract. We remanded the case with directions for the district court to determine whether the Gilberts were entitled to any damages for the nine-day limit. *Id.* On remand, the district court concluded that the parties intended their agreement in the TRC–Gilbert contract to substitute for their previous agreement in the TRC–City contract regarding the nine-day limitation on construction. The district court therefore awarded the Gilberts compensation for the sixteen business days occurring between October 26 and November 12. However, the district court declined to award the Gilberts any damages under the TRC–City contract.

We agree with the district court's conclusion. As noted in *Gilbert I*, it is debatable whether the nine-day limit in the TRC–City contract was superceded or waived by the TRC–Gilbert contract. 112 Idaho at 397, 732 P.2d at 366. Although on remand the district court did not address the nature of these competing contract terms, we now conclude—as a matter of law—that the "agreement" between the parties regarding damages for extended construction was ambiguous. *Clearwater Minerals Corporation v. Presnell*, 111 Idaho 945, 729 P.2d 420 (Ct.App.1986) (appellate court exercises free review on the question of ambiguity). The district court's conclusion on remand implicitly recognizes this holding. Once a contract is found to be ambiguous, its interpretation turns on the parties' intent, which is a question of fact. *DeLancey v. DeLancey*, 110 Idaho 63, 714 P.2d 32 (1986).

Here the district court rightly perceived its role in determining the meaning of the parties' agreement. The district court concluded that the TRC–Gilbert contract served as a substitute for the nine-day limit in the TRC–City contract. This decision is supported by substantial and competent evidence. *See Bischoff v. Quong–Watkins Properties, supra.* Although the Gilberts claim that the TRC–Gilbert contract dealt only with the completion of the project during business hours, the contract specifically stated that the daily fee for lost business was expected to continue until *completion of the project.* This term can be interpreted to mean that the parties intended to extend the project, or it can be interpreted to mean that, even if the project were not extended, the parties intended the daily fee for loss in business would act as a substitute for any damages resulting from breach of the nine-day construction limit in the TRC–City contract. Under the circumstances, we defer to the district court's interpretation of this provision. We therefore hold that the district court did not err in concluding that the TRC–Gilbert contract was a substitute for the nine-day limit on construction provided for in the TRC–City contract.

### Conclusion

In summary, we vacate that portion of the district court's order dealing with the measure of damages to be awarded to the Gilberts. We remand this case to the district court with specific instruction for determining the amount of damages in accordance with this opinion. The remaining portions of the order are affirmed. Because each party has prevailed in part on this appeal, we decline to award attorney fees or costs.

BURNETT and SWANSTROM, JJ., concur.