807 P.2d 633

Greg J. **FULLER** and James C. Meservy, dba Fuller & Meservy, Plaintiffs-Counterdefendants-Appellants-Cross Respondents,

v.

Martin **WOLTERS** and Doris Wolters, husband and wife, Defendants-Counterclaimants-Respondents-Cross Appellants.

Martin **WOLTERS** and Doris Wolters, husband and wife, Third Party Plaintiffs-Respondents-Cross Appellants,

v.

Daniel L. **MINK**, Third Party Defendant-Appellant-Cross Respondent.

No. 18271.

Supreme Court of Idaho, Boise, October 1990 Term.

March 11, 1991.

Benoit, Alexander, Sinclair, Doerr, Harwood & High, Twin Falls, for plaintiffs-appellants. Thomas B. High argued.

Thomas G. Maile IV, Boise, for respondents.

BAKES, Chief Justice.

Plaintiff appellants Fuller and Meservy brought suit against respondents Martin and Doris Wolters to collect attorney fees and costs which they allegedly earned while representing the Wolters in a previous lawsuit. The Wolters filed a counterclaim against Fuller and Meservy and a third party claim against their associate Mink, seeking damages for, among other things, breach of contract and negligence (legal malpractice). The trial court granted part of plaintiff's motion for partial summary judgment and dismissed the Wolters' claims of fraud, gross negligence, consumer protection violations, breach of fiduciary duty, and punitive damages. The jury found in favor of the Wolters on the remaining issues, breach of contract and negligence. Fuller & Meservy and Mink appeal from the verdict and various rulings of the trial court. The Wolters appeal from the trial court's decision denying them attorney fees. We affirm the trial court on all of the issues except costs. We vacate the order awarding costs and remand that issue for further proceedings.

Martin Wolters met Leo Kawakami while they both were in federal prison in California. Wolters was serving time for failure to file federal income tax returns, and Kawakami was serving time for fraud. When he was released, Wolters returned to his farm in Jerome County, and Kawakami soon joined him, ostensibly to help the Wolters with their finances. In the process the Wolters provided Kawakami with a list of farm equipment which they owned in part and leased in part from another party. Kawakami then sold those pieces of equipment to the Idaho Funding Corporation for $40,000 and disappeared with that money and additional money he had swindled from the Wolters in other transactions.

When the Wolters did not deliver the equipment, Idaho Funding brought suit against various parties, including Kawakami and the Wolters, alleging fraud and breach of contract and asking for specific performance. The Wolters were ordered to show cause why they should not immediately deliver possession of the farm equipment to Idaho Funding. In response to the suit, the Wolters approached the law firm of Fuller & Meservy to represent them. The case was assigned to the firm's relatively new associate, Daniel Mink.

At the show cause hearing, Idaho Funding did not state that they were relying upon the claim and delivery statutes to support their claim for the equipment, but instead their complaint and supporting documents asked for specific performance. In response, Mr. Mink did not assert that Idaho Funding post a bond, as is required by I.C. § 8–303 of the claim and delivery statutes,[1] but instead argued that the property in question was not unique so specific performance did not apply. The judge issued a restraining order prohibiting the Wolters from disposing of the property and requiring the Wolters, not Idaho Funding, to post a bond for the value of the property. Mr. Mink apparently did not object to this order at the hearing. When the Wolters were unable to secure a bond in the amount required, Mr. Mink moved the court to reconsider the bonding order and to require Idaho Funding to post a bond, asserting for the first time the bonding provisions in the claim and delivery statute. The court denied these motions. Idaho Funding then took the equipment in question in June of 1986 and, as a result, the Wolters suffered damages to the crops they had already planted. The Wolters subsequently retained new counsel, who argued that the provisions of the claim and delivery statutes were applicable. Nevertheless, they were also unsuccessful in requesting the

court to set aside the order regarding the possession of the equipment and the bond.

The suit originally brought by Idaho Funding to gain possession of the equipment was eventually tried in front of a jury. The Wolters had filed a counterclaim, and they prevailed and were awarded $76,952.90 in damages by the jury from Idaho Funding. The court also held that they were entitled to recover the equipment or its value from Idaho Funding. However, the Wolters were unable to collect on this judgment, in part because most of the equipment had been sold by Idaho Funding to third parties. Thus, they were unable to farm in 1987, and in 1988 were able to renew farming on a limited basis only.

When the Wolters obtained new counsel for the Idaho Funding matter, Fuller & Meservy initiated the current action on October 23, 1986 to recover attorney fees, and the Wolters counterclaimed. Several motions were filed, both before and during trial, and the trial court made several rulings which are at issue here.

(1) The trial court held that since the 1986 crop loss issue had already been litigated in the *Idaho Funding* trial, collateral estoppel barred the relitigation of that issue in this case. When the jury returned its special verdict awarding the Wolters $454,772 in damages against Fuller & Meservy and Mink, the trial court reduced the portion of the verdict reflecting the 1986 damages, $80,512, by $3,559.10 to equal the amount of the damages awarded to the Wolters in *Idaho Funding*, $76,952.90.

(2) In the jury instructions, the trial court included verbatim certain provisions of the Idaho Code and Idaho Rules of Civil Procedure, including I.R.C.P. 6(a), 6(c)(2), 65(b), 65(c) and many of the Idaho statutes regarding claim and delivery. Additionally, two of the questions the jury was required to answer were (1) "did the law firm of Fuller & Meservy furnish legal services

1. **I.C. § 8–303. Plaintiff's undertaking.**—A writ of possession shall not issue until plaintiff has filed with the court a written undertaking executed by two (2) or more sufficient sureties, to the effect that they are bound to the defendant in double the value of the property, as deter-
mined by the court, for the return of the property to the defendant, if return thereof be ordered, and for the payment to him of any sum as may from any cause be recovered against the plaintiff.

to the defendants, the Wolters, which service has not yet been paid," and (2) "did Fuller & Meservy or Mink breach the contract to provide legal services to the Wolters?" During deliberations, the jury asked the judge whether it was legally possible to answer "yes" to both questions, to which the court answered "no."

(3) Appellants Fuller & Meservy and Mink prepared to subpoena two judges, Judge Becker and Judge Burdick, to testify concerning Mink's competence and identified them as witnesses in response to the Wolters' interrogatories. The trial court ruled that Canon 2 of the Idaho Code of Judicial Conduct and the prejudicial nature of the testimony precluded the two judges from testifying at trial.

(4) The trial judge prohibited Fuller & Meservy and Mink from entering Martin Wolters' income tax evasion conviction into evidence and allowed several witnesses to testify on subjects about which appellants objected.

(5) The trial court denied Fuller & Meservy and Mink's motion for a directed verdict or judgment notwithstanding the verdict.

(6) The trial court granted the Wolters' motion for prejudgment interest on the portion of the award regarding the 1986 crop damages. The court amended the judgment to reflect the prejudgment interest and then entered a second amended judgment to correct a clerical error.

(7) The trial court awarded all costs requested by the Wolters and denied both parties' claims for attorney fees.

Appellants Fuller & Meservy and Mink appeal from these various rulings of the trial court. Respondents Wolters cross-appeal the trial court's denial of their attorney fees.

## I. ISSUE PRECLUSION

Appellants Fuller & Meservy and Mink first argue that the trial judge erred when he limited relitigation to only the 1986 crop damages and allowed litigation with regard to damages suffered in later years. They claim that all damages should

have been limited by the *Idaho Funding* case because, they contend, since the elements of damages in the pleadings of this case and in the *Idaho Funding* case were identical, the entire issue of damages as to all the years in question has already been litigated. Therefore, appellants claim the only issue in this case should have been whether they were liable to the Wolters for $76,952.90 in damages awarded against Idaho Funding.

The trial court applied the doctrine of collateral estoppel and concluded that the *Idaho Funding* judgment had preclusive effect only with regard to the crop damages in 1986. We agree with the trial court's conclusion. In *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1987), we discussed the test for determining when collateral estoppel should apply.

> The more appropriate test for whether collateral estoppel should apply includes the following: (1) Did the party "against whom the earlier decision is asserted ... have a 'full and fair opportunity to litigate that issue in the earlier case.'" ... (2) Was the issue decided in the prior litigation "identical with the one presented in the action in question?" ... (3) Was the issue actually decided in the prior litigation? ... (4) "Was there a final judgment on the merits?" ... (5) "Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"

112 Idaho at 183–84, 731 P.2d 171 (citations omitted).

Applying *Anderson*, we conclude that the trial court correctly ruled that the Idaho Funding judgment should only have preclusive effect with regard to the damages incurred by the Wolters in 1986. First, the Wolters had a "full and fair opportunity to litigate" only the 1986 damages which arose through their inability to farm after Idaho Funding took their farm equipment. As the Wolters pointed out in their brief, they could not have brought suit against appellants until the *Idaho Funding* case established that they were entitled to the return of their farm equipment. Only after the entry of the *Idaho Funding* judg-

ment, when the Wolters were not able to regain possession of the equipment because of Idaho Funding's violation of the court's restraining order and disposition of the equipment to other people, did the Wolters begin to suffer additional damages. Thus, since the Wolters suffered those additional damages only after the *Idaho Funding* case was over, they could not have recovered those damages in their suit against Idaho Funding. Applying the second part of the *Anderson* test, the issue actually decided in the prior litigation had to do only with the 1986 damages. The Wolters were awarded a "final judgment" of $76,952.90 for those damages. Thus, according to *Anderson, supra,* the Wolters were not precluded from raising the issue of additional damages in the subsequent malpractice proceeding against Fuller & Meservy and Mink. We therefore affirm the trial court on this issue.

## II. JURY ISSUES

■ Appellants next claim that the trial court gave improper jury instructions and improperly responded to a question from the jury. They argue that some of the instructions read to the jury were mere academic recitations of statutes, given with no application of how they applied to the case, and thus they were not simple or easy to understand, as is required by Idaho law. *See State v. Dickens,* 68 Idaho 173, 191 P.2d 364 (1948). We find no error.

As respondents' brief points out, there is no indication in the record that appellants attempted to clarify the objectionable instructions. They merely objected to them, stating that they believed the legal issues had been "adequately set out in the testimony." However, earlier in the trial, appellants objected to the introduction of these statutes into evidence and stated that the court had a duty to instruct the jury on the law at the close of trial. The court complied and did not admit the statutes into evidence, saving them to be read later as instructions.

■ The theory of the Wolters' case was that the claim against them in the *Idaho Funding* litigation was a claim and deliv-

ery action, and that the appellants, their attorneys representing them in the action, negligently failed to recognize that, and thus failed in asserting that Idaho Funding post the claim and delivery bond required by I.C. § 8–303. The Wolters requested the court to instruct the jury on the statutory law related to claim and delivery, which it did. A party is entitled to have the jury instructed on its theory of the case, *Hodge v. Borden,* 91 Idaho 125, 417 P.2d 75 (1966), and the trial court did not err by instructing on the statutory elements of a claim and delivery proceeding.

■ Second, appellants claim that the trial court responded incorrectly to a question of the jury regarding plaintiffs' claim in their complaint for attorney fees. The jury asked the judge whether it could award Fuller & Meservy and Mink the attorney fees the Wolters owed to them and also find that Fuller & Meservy and Mink had breached their contract under which those services to the Wolters were provided. The trial court answered the question "no." Appellants assert that was error. However, the Wolters were alleging a substantial and material breach of contract and professional duty by Fuller & Meservy and Mink in representing them which, if correct, would have constituted a material breach of the attorney-client contract and would have precluded the attorneys from suing under the contract. *Nelson v. Hazel,* 89 Idaho 480, 406 P.2d 138 (1965), *appeal after remand,* 91 Idaho 850, 433 P.2d 120 (1967) ("A person may not enforce collection under a contract which has not been performed."). The jury found a substantial breach of contract and professional duty on the part of Fuller & Meservy and Mink and assessed damages against them in the sum of $454,772. As we conclude in Part IV, the record supports the jury's finding of breach and damages, except for the minor modification of $3,559.10 referred to in Part I above. It would have been inconsistent to instruct the jury that Fuller & Meservy and Mink could recover on their claim of fees under their attorney-client employment contract and, at the same time, instruct the jury that they could

award damages because they found that the contract was substantially breached.

## III. EVIDENTIARY ISSUES

Appellants raise several evidentiary issues on appeal. They claim that the trial court erred by prohibiting two judges from testifying with respect to Mink's competence, by prohibiting appellants from offering evidence regarding Martin Wolters' prior misdemeanor conviction, by allowing one expert witness to testify outside of his area of expertise, and by allegedly permitting lawyer witnesses to speculate on what Mink should have done at the show-cause hearing.

We affirm the trial court with regard to all these evidentiary rulings. Trial courts have discretion in admitting evidence at trial, and on appeal their decisions will be reversed only upon a showing of a clear abuse of discretion. *Baker v. Shavers, Inc.*, 117 Idaho 696, 791 P.2d 1275 (1990).

■ Regarding the proposed testimony by two local judges, the district court stated that "as the tenor of Canon 2 [of the Idaho Code of Judicial Conduct] suggests, policy and ethical considerations require that judicial testimony be carefully evaluated for admissibility purposes. Specifically, that testimony must be examined for probative value on a case by case basis weighed against prejudice and particularly the requirements of Canon 2." The Idaho Code of Judicial Conduct, Canon 2, states in part:

B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He shall not lend the prestige of his office to advance the private interest of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. Except in a proceeding involving him

personally or in response to an official summons, a judge shall not testify as witness in any court proceeding.

I.R.E. 403 further precludes admission of evidence which is more prejudicial than probative or relevant. The trial court correctly considered the danger of unfair prejudice which could result if a judge testifies. A judge brings the authority of his office to the stand, and jurors might be likely to give greater weight to his testimony than to the testimony of other witnesses. Furthermore, the trial court reached his conclusion "with consideration that other competent experts who are not sitting judges may be called by counterdefendant's attorneys to assist the jury in issues they must decide." Given these considerations, we find that the trial court did not abuse its discretion in prohibiting the judges' testimony.

■ The trial court also did not err in excluding evidence of Martin Wolters' prior misdemeanor conviction for failure to file a federal tax return. I.R.E. 609(a) provides that only evidence of a felony involving dishonesty may be admitted, and then only if the trial court concludes that the probative value of the evidence outweighs any unfair prejudice.[2] Martin Wolter's conviction for failure to file income tax returns was a misdemeanor, not a felony. We uphold the trial court's decision to prohibit this evidence.

■ Finally, appellants claim that the trial court erred by allowing certain witnesses to testify. Appellants first claim that respondents' witness Glenn Ferrell was erroneously permitted to testify regarding farm real estate rental values, subjects outside of those mentioned in respondents' discovery responses, and that the testimony of respondents' lawyer-experts was speculative because they testified on the type of argument Mink could have made at

---

2. I.R.C. 609(a) states in part: "For the purpose of attacking the credibility of a witness, evidence of the fact that he has been convicted *of a felony* and the nature of the felony shall be admitted if elicited from him ... but only if the court determines ... that the fact of the prior conviction or the nature of the prior conviction, or both *are relevant to his credibility* and that the probative value of admitting this evidence outweighs its prejudicial effect...." (Emphasis added.)

the *Idaho Funding* show-cause hearing. The trial court indicated that Glenn Ferrell, who was a farmer, did not testify as an expert witness regarding farming and land prices, but testified merely as a lay witness with agricultural experience in the community. The trial court specifically stated that although the information about which Glenn Ferrell testified was "not in the general knowledge of every resident of Jerome county," it was "generally known to most people who have some association with agriculture." The trial court then concluded that "it's appropriate for this particular witness to testify and answer those questions, regardless of whether or not he has been specifically designated to appear as an expert in this particular case." The trial court is in the best position to judge the fairness of permitting a witness's testimony to outside of the areas disclosed in the discovery request. Here the testimony was generally known and understood in the agricultural community and was cumulative in many respects to other testimony given by Wolters himself. As the trial court noted, it would be easy to find rebuttal testimony very quickly, if any was necessary. We find no abuse of discretion by the trial court.

■ As to the claim that the other lawyer-witnesses were allowed to speculate in testifying as to the standards of practice within the community, such expert testimony as to whether appellants' conduct conformed to that standard was relevant to the issue of legal malpractice. The claim that parts of the reasons for the opinions rendered were based upon speculation goes to its weight more than its admissibility— at least the trial court apparently so concluded. Appellants have not demonstrated an abuse of discretion.

## IV. JURY VERDICT

■ Fuller & Meservy and Mink argue that the jury's verdict was based on speculation and conjecture, such that the trial court erred in failing to direct a verdict or enter a judgment notwithstanding the verdict in favor of them. They contend that the Wolters' business losses were based on speculation and estimates and that the verdict was in excess of actual damages. They further claim that if the speculative evidence had not been allowed, no verdict could have been sustained in favor of the Wolters.

In *Big Butte Ranch, Inc. v. Grasmick*, 91 Idaho 6, 10, 415 P.2d 48, 52 (1966), this Court heard a similar claim that a jury's verdict which awarded damages for crop losses was "excessive and contrary to the evidence because insufficient evidence was produced." In response, this Court stated:

> Appellant argues any amount awarded must necessarily have been based upon speculation, guess or conjecture. The record however does not support that contention. Granted that damages could not here be determined with mathematical exactness, yet the authorities make clear that such precision is not required. Damages need be proved only with a reasonable certainty and the courts have concluded this simply means that the existence of damages must be taken out of the realm of speculation. Certainly a party who has breached his contract will not ordinarily be permitted to escape liability because of the difficulty or uncertainty of proving the damages which have resulted.

91 Idaho at 10, 415 P.2d 48.

In *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986), we stated:

> In determining whether a directed verdict or judgment n.o.v. should have been granted, the appellate court applies the same standard as does the trial court which passed on the motion originally.
>
> . . . .
>
> Hence, this Court must review the record of the trial below and draw all inferences from the evidence in a light most favorable to the non-moving party to determine if there was substantial evidence to justify submitting the case to the jury. Based upon our review of the record on this standard, we conclude that there was substantial evidence to justify submitting the case to the jury.

111 Idaho at 764, 727 P.2d 1187.

In this case, we also conclude that "there was substantial evidence to justify submit-

ting the case to the jury." The record is replete with testimony regarding the amount of damages the Wolters suffered as a result of appellants' breach. Many witnesses other than Martin Wolters testified as to the amount of his damages. The Jerome County Extension Office reports corroborated the evidence of crop yields and prices during the time in question, and this evidence was available to the jury. Martin Wolters, himself an experienced farmer, testified concerning his damages, and he testified that his estimates were actually lower than what his crops would normally have yielded. Given all the testimony in the record, we conclude that the testimony introduced by the Wolters' was not mere speculation and thus, the jury's verdict was not based on speculation or conjecture. We hold that the trial court did not err in denying appellant's motion for directed verdict or judgment notwithstanding the verdict.

## V. PREJUDGMENT INTEREST

Appellants next argue that the trial judge improperly granted respondents' motion for prejudgment interest on the portion of Wolters' claim that was based on the *Idaho Funding* judgment. Appellants assert that *Chenery v. Agri–Lines Corp,* 115 Idaho 281, 766 P.2d 751 (1988), upon which the trial court relied to award prejudgment interest, does not apply because in that case, the amount of damages was not relitigated in the second action, while here the amount of damages were relitigated. Since appellants did not defend against the damages issue in *Idaho Funding,* they claim it would be inequitable to require them to compensate the Wolters for the alleged loss of use of their money resulting from their inability to satisfy their judgment against the parties in *Idaho Funding.*

The trial court relied primarily on *Chenery* to award prejudgment interest to the Wolters, stating:

In *Chenery v. Agri–Lines Corporation,* 115 Idaho 281, 766 P.2d 751 (1988), plaintiff sued defendant for damages suffered as a result of a defective pump. There-

after, the defendant filed a third party action against Layne Pump, Inc. The defendant settled its lawsuit with plaintiff and then a jury trial was held on the third-party action. The Court held that the defendant-third-party plaintiff was entitled to prejudgment interest from the date it settled with plaintiffs for that was the date the amount "was ascertained and subject to mathematical calculation. The Court agreed with the assertion that Agri–Lines liability in this instance was ascertainable since the damages were established by its settlement prior to trial with Chenery and the Spencers, and that the only issue in the subsequent third-party action was whether Layne would be responsible for all, none, or a portion of the monies paid by Agri–Lines." [766 P.2d] at 759.

A judgment was entered in favor of Wolters on May 6, 1987, for $76,952.90, and interest would accrue as of the date of that judgment. The amount of crop loss damage for 1986 was fixed. Although the jury awarded an amount larger than could be awarded, the amount of damage can be said to be fixed as May 6, 1987.

We agree with the trial court's conclusion and application of *Chenery.* The Wolters were awarded a judgment for $76,952.90 for crop loss in 1986 in the *Idaho Funding* suit, but they were unable to collect on the judgment, in part because, as the jury found, Fuller & Meservy and Mink were negligent in not asserting the bond required by the claim and delivery statutes. The trial court in this case limited relitigation of the 1986 damages issue under the doctrine of collateral estoppel. This bar set the upper limit of the amount of damages incurred by the Wolters in 1986 at $76,952.90. The only question remaining with regard to the 1986 damages issue was whether Fuller & Meservy and Mink were liable for those damages. The amount of damages incurred by the Wolters in subsequent years and whether appellants were liable for those damages were still unliquidated claims, and no interest was allowed on those damages. But as to the 1986 damages, they were liquidated and ascertainable as a result of the *Idaho Funding*

judgment. The trial court did not err in allowing prejudgment interest on the 1986 damages.

Appellants argue that since no money was due from them on the *Idaho Funding* judgment, they should not be required to pay interest on that award. While the appellants owed the Wolters no money as a result of the *Idaho Funding* case, the prejudgment interest awarded in this case is not on the *Idaho Funding* judgment, although that judgment would bear interest in the statutory amount. The interest awarded was on the present judgment. The *Idaho Funding* case merely set the amount of damages for 1986 crop losses that the Wolters incurred, and thus those damages were liquidated and ascertainable. The damages occurred in 1986, and the jury in this case determined that appellants were responsible for those damages. The trial court did not err in awarding prejudgment interest on the award for 1986 damages.

In *Davis v. Professional Business Services*, 109 Idaho 810, 712 P.2d 511 (1985), we stated that "[g]enerally prejudgment interest is not awarded in tort cases.... There are exceptions to this rule, including when damages are reasonably certain in amount through reference to market values or by computation." 109 Idaho at 815. Because the 1986 crop loss damages had been previously adjudicated, they were certain and ascertainable, and thus the trial court did not err in awarding prejudgment interest on those 1986 damages under *Chenery v. Agri–Lines Corp., supra.*

## VI. COSTS AND ATTORNEY FEES

Finally, appellants argue that the trial court erred in awarding costs to respondents and in not making express findings as to why specific items of discretionary costs were allowed. They argue that since respondents did not prevail on all issues (appellants were awarded summary judgment on several issues), an award of costs to respondents was not appropriate. Respondents, on the other hand, argue that the trial court has discretion to grant costs and that the party disputing an award of costs has the burden of showing the court's abuse of discretion.

The trial court has discretion to determine who is the prevailing party regarding an award of costs. *Gilbert v. City of Caldwell*, 112 Idaho 386, 732 P.2d 355 (Ct.App.1987), appeal after remand 115 Idaho 1035, 772 P.2d 242; *Evans v. Sawtooth Partners*, 111 Idaho 381, 723 P.2d 925 (Ct. App.1986); *Ace Realty, Inc. v. Anderson*, 106 Idaho 742, 682 P.2d 1289 (Ct.App.1984). In this case, the trial court specifically stated that the Wolters were the prevailing party. We find no error with this conclusion.

However, we do find error in the trial court's awarding of all of the costs which the Wolters claimed. I.R.C.P. 54(d) sets out two categories of costs which are recoverable under the rule. I.R.C.P. 54(d)(1)(C) provides for certain costs which are allowable as "Costs as a Matter of Right." There are ten different categories of costs as a matter of right set out in subsection (C). I.R.C.P. 54(d)(1)(D) provides for certain "Discretionary Costs" which are "not enumerated in, or in an amount in excess of that listed in subparagraph (C), [which] may be allowed upon a showing that said costs were necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party." Respondents' memorandum of costs was five pages long, and lumped together approximately 88 specific cost items, some of which would constitute costs as a matter of right under subsection (C), and some of which would only have been discretionary costs under subsection (D). Neither the memorandum of costs filed by Wolters nor Wolters' presentation at the hearing on the objection to costs, made any assertion or showing that any of the costs which fell outside of the category of costs as a matter of right under subsection (C) were "necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party." At the hearing Wolters' counsel stated that all of the costs were lumped together because that is the way his computer recorded them. We con-

clude that there is an insufficient showing in the record to support an award of discretionary costs. Subsection (D) requires that "the trial court, in ruling upon objections to such discretionary costs contained in the memorandum of costs, shall make express findings as to why such specific item of discretionary cost should or should not be allowed." The trial court made no such express findings, and indeed it would have been difficult to make such findings since there was no showing as to specific items. The trial court merely concluded that "the costs as requested are all appropriate and reasonable." Since the Wolters made no showing that their discretionary costs were exceptional, necessary, or reasonable, and since the trial judge did not make such an express finding with regard to each specific cost item, as is required by I.R.C.P. 54(d)(1)(D), we set aside the award of costs and remand to the trial court to allow only those costs which the Wolters are entitled to as a matter of right pursuant to I.R.C.P. 54(d)(1)(C).

Finally, appellants, on direct appeal, claim they are entitled to attorney fees under I.C. §§ 12–120 and 12–121. However, they did not prevail, so their claim has no merit.

 Respondents cross appealed from the district court's denial of their attorney fees, claiming that a contract for attorney services involves a commercial transaction under *Griggs v. Nash*, 116 Idaho 228, 775 P.2d 120 (1989), which held that I.C. § 12–120 provides for mandatory, not discretionary, award of attorney fees to a prevailing party in commercial litigation. In *Griggs*, neither party asserted that a malpractice action is basically a tort rather than a "commercial transaction." We were not asked in *Griggs* to decide whether a malpractice action involving a commercial transaction falls within the parameters of I.C. § 12–120(3). We now hold that an action for legal malpractice is a tort action, and even though the underlying transaction which resulted in the malpractice was a "commercial transaction," attorney fees under 12–120(3) are not authorized. We agree with the trial court's statement that

under our present statute, "tort actions are essentially actions in which the parties bear their own attorney's fees, regardless of [who] prevail[ed]." *See also T–Craft Aero Club, Inc. v. Blough*, 102 Idaho 833, 642 P.2d 70 (Ct.App.1982); *Chenery v. Agri–Lines Corp.*, 106 Idaho 687, 682 P.2d 640 (Ct.App.1984). We affirm the trial court's denial of attorney fees. We also decline to award attorney fees on appeal, for the reasons stated above.

JOHNSON, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, concurring and dissenting.

I concur fully with the majority opinion except for the part in which the district court's denial of the Wolters' attorney fees is affirmed. The Wolters should be granted attorney fees under I.C. § 12–120(3). This Court in *Griggs v. Nash*, 116 Idaho 228, 234–35, 775 P.2d 120, 126–27 (1989), upheld a district court award of attorney fees to the prevailing party in a legal malpractice action pursuant to the "commercial transaction" provision of I.C. § 12–120(3).