858 P.2d 778

**Jackie L. SMITH, Plaintiff–Appellant,**

v.

**DAVID S. SHURTLEFF AND ASSOCIATES, Defendant–Respondent.**

No. 19339.

Court of Appeals of Idaho.

May 28, 1993.

Rehearing Denied May 28, 1993.

Petition for Review Denied Sept. 29, 1993.

Lojek & Gabbert, Chartered, Boise, for appellant on appeal only. Donald W. Lojek argued.

Beer & Cain, Boise, for respondent. Stephen L. Beer argued.

SUBSTITUTE OPINION

The Court's prior opinion, dated April 1, 1993, is hereby withdrawn.

SWANSTROM, Judge.

In a trial, Jackie Smith was denied recovery in his malpractice action against David S. Shurtleff and Associates, architects. Smith appeals, arguing that the record does not support the district court's conclusion that Smith's negligence was at least as great as the negligence of Shurtleff, barring any recovery by Smith. We affirm.

Smith held an option on a parcel of real estate in Boise which he set out to develop for commercial use. Sometime in 1986, Smith contacted Shurtleff to draw up a site plan to suit the requirements of the Department of Health and Welfare which was considering various sites and proposals for new office facilities. Smith's proposals were accepted and he negotiated a long-term lease with the Department dependent upon the construction of a 40,000 square foot office building with 210 on-site parking spaces.

Initially, Smith and Shurtleff had discussed their mutual involvement in the entire project as a joint venture, in which Shurtleff would supply all architectural services, but Smith soon advised Shurtleff that he wanted to sell the project. Smith was negotiating a sale to Janss Corporation and presented Janss with Shurtleff's preliminary drawings of the lot indicating the location of a two-story building, the layout for 210 parking spaces, and the large shade trees which were to be preserved. Smith and Janss signed an agreement on January 15, 1987. Janss selected its own architect, not Shurtleff, to complete the project.

In the Smith/Janss agreement, Smith guaranteed the accuracy of the site plan that Shurtleff had prepared. When Smith later learned from Janss's representatives that the actual dimensions of the property, as surveyed, did not correspond to those used in Shurtleff's plan and that the designed parking plan did not comport with the city parking ordinances, Smith sued Shurtleff for the resulting loss of profit he suffered in the deal with Janss. Smith alleged that Shurtleff was negligent in preparing and designing the site plan, causing Smith damages of approximately $60,000. Shurtleff answered the complaint, alleging, among other things, that Smith's own negligence was the cause of his damages.

The case was tried to the court without a jury. The district court entered its memorandum opinion and judgment finding that both parties were negligent, but that Smith's own negligence was at least equally the cause of his loss of profits from the project. The court also ruled that Smith did not prove the amount of his damages with any reasonable degree of certainty. In response to a motion by Smith to reconsider the judgment, the court heard counsels' arguments and filed another memorandum decision dated April 10, 1991. The memorandum clarified the court's findings as to the negligent acts of Smith and Shurtleff, and the judgment in Shurtleff's favor was left undisturbed.

Smith asserts on appeal that the district court erroneously found that he was contributorily negligent because the record does not establish any duty owed by him, and no standard of care against which Smith's conduct could be measured to assess his negligence. Because he was described as having some experience as a real estate developer, in addition to being a certified public accountant and an attorney, Smith contends that expert testimony was required to show how a professional similarly situated would have acted under the circumstances. Smith also contends that the court erred in holding that his damages were shown to be speculative. Essentially, Smith claims that the record does not support the court's memorandum decision and judgment. We disagree.

The district court found that Smith was negligent in not having a professional surveyor measure the lot once the project progressed beyond a preliminary stage and it was apparent that adequate space for parking was critical to the success of the project. The court also found that Smith was negligent in not submitting the parking plan for approval to the Boise City Plan-

ning and Zoning Commission before relying on it. The court then determined that Smith's negligence contributed to the cause of his damages at least as much as Shurtleff's negligence. Shurtleff's negligence, the court found, was in not verifying the lot dimensions he had obtained from Smith against the county records and in misinterpreting the ordinances dealing with service and alleyways, incorrectly applying them to the driveways he designed for the parking lots on the site.

The determination and apportionment of negligence is for the trier of fact to determine and will not be set aside if supported by competent and substantial evidence. *Burgess v. Salmon River Canal Co.*, 119 Idaho 299, 309, 805 P.2d 1223, 1233 (1991). At the trial level the trier of fact, in this case the district judge, is the arbiter of conflicting evidence. *Abbott v. Nampa School Dist. No. 131*, 119 Idaho 544, 547, 808 P.2d 1289, 1292 (1991). The credibility and weight to be given evidence is in the province of the trier of fact, and the findings made by the trial judge will not be set aside unless clearly erroneous. *Id.* at 547–48, 808 P.2d at 1292–93.

During the trial there was expert testimony from two Boise architects describing the skill, knowledge and care normally exercised by an architect in good standing in Boise, Idaho. Some of that testimony supported the judge's findings that the architect was negligent. Those findings have not been challenged on appeal.

On the other hand, no expert testimony was offered to define the standard of care expected of a person in Smith's situation, as an owner-developer of real property. No person testified that Smith was negligent because he did certain things or failed to do certain things contrary to the way a prudent "developer" in his situation would have acted. The district judge held Smith to a standard of ordinary care or "the care a reasonably careful person would use under the circumstances similar to those shown by the evidence." *McPheters v. Peterson*, 108 Idaho 107, 108, 697 P.2d 447, 448 (1985). We hold that this was not error. We have not been shown

any persuasive authority holding that there are special or professional standards of care applicable to "developers."

Smith not only was a developer of the property, he held an option for its purchase and for a brief time, during the course of development, he owned an interest in the property which enabled him to deal with the property as the owner. In Idaho an owner is presumed to know the boundaries of his own land and the quantity of his acreage. *Sorenson v. Adams*, 98 Idaho 708, 715, 571 P.2d 769, 776 (1977); *Thieme v. Worst*, 113 Idaho 455, 458, 745 P.2d 1076, 1079 (Ct.App.1987). *Accord Watt v. Patterson*, 125 Cal.App.2d 788, 271 P.2d 200 (1954); *Hays v. Allen*, 112 Cal. App.2d 676, 247 P.2d 94 (1952). The law recognizes that an owner who is selling his property has a special duty to know the facts to which his representations relate. In such circumstances, even innocent misrepresentations by the owner may result in tort liability. *Sorenson v. Adams, supra.*

It seems clear from these cases, and from the evidence presented, that Smith was under a legal duty to know and to correctly represent the size and dimensions of the property he was developing for sale or lease to others. The duty that Smith had extended to the architect he employed. As between these two principals, Smith could have shifted all responsibility to Shurtleff for determining the correctness of the description he furnished, but he did not do so. Neither did he independently verify the correctness of the property's dimensions. Smith's negligence can be measured by established standards of ordinary care. Smith has made no persuasive argument that his conduct can be measured only against special standards of care applicable to "developers," as established by experts in the field. We reject the argument.

It is undisputed that Smith did not obtain a professional survey and did not authorize Shurtleff to have a survey prepared for assistance in drafting the plan which required 210 on-site parking spaces. The district court easily could have found

from the undisputed evidence in the record that Smith knew or should have known that a site with the assumed dimensions of 284 feet by 304 feet would hardly accommodate the desired building and 210 parking spaces. It is apparent from the record that Smith knew there was a serious problem in meeting the parking requirements, and that Smith had this awareness when he signed the agreement to sell the project to Janss. Smith did not deny that he provided lot dimensions of 284 feet by 304 feet to Shurtleff, as Shurtleff testified, although he did not specifically recall giving this information to Shurtleff. Smith testified that the lot dimensions had probably been taken from the listing materials in the possession of the listing agent on the property. Nor did Smith deny that Shurtleff had advised him a survey would be required to accurately complete the design.

The parties agree that, on January 12, 1987, Shurtleff prepared a second, more detailed drawing showing the actual parking spaces and one-way driveways for parking access. Shurtleff testified that his refined plan contained the 210 spaces, but only as a result of using less than the twenty-two foot aisles required in the city parking ordinances. He also testified that he had contacted someone at Boise City Planning and Zoning and received an informal approval of his interpretation of the ordinances. Smith testified that with the second drawing and the informal approval of the feasibility of the plan, "we used this, of course, as the basis to go ahead and close out with Janss and just to move forward."

The record contains conflicting evidence as to when Smith learned that Shurtleff's plan was unworkable. According to Shurtleff's testimony, Smith had suggested that they go together on January 14, 1987, to look at the adjacent lot to investigate whether that lot might be available for additional parking because the plan was not going to work. Shurtleff alluded to a January 13, 1987, communication between Smith and Tom Allen of Janss, where Allen had told Smith that the parking scheme would not work. He also testified about a January 16, 1987, lunch meeting where he and Smith had discussed both the problem with the lot dimensions and his error in interpreting the width restrictions for driveways in parking lots. At that meeting, Smith terminated Shurtleff's involvement with the project.

Smith, in his testimony, insisted that he would never have signed the agreement with Janss on January 15 had he known of the deficiencies in Shurtleff's plan. Smith asserted it was not until sometime in March, 1987, that he learned Shurtleff's plan would not work, and definitely not until after he had paid Shurtleff on February 17, 1987. He denied any discussion of the problems with the plan with Shurtleff on January 16, 1987. He also denied any knowledge of the survey conducted for Janss which revealed an eighteen-foot error in the east-west dimension of the site.

From these facts the district court could have concluded that any reasonable person would have foreseen a significant risk in proceeding with the project without a professional survey and without formal approval of what Shurtleff had termed a "novel interpretation" of the ordinances which allowed him to fit the 210 spaces on the plan. Accordingly, we hold the evidence sufficient to support the court's findings attributing to Smith and to Shurtleff an equal quantum of the negligence which caused Smith's loss. We also hold that, in light of its findings of causation, the court correctly applied Smith's contributory negligence to bar recovery to Smith. *See Schaefer v. Elswood Trailer Sales,* 95 Idaho 654, 516 P.2d 1168 (1973); I.C. § 6–804. Having reached this conclusion, we need not discuss any of Smith's contentions regarding the sufficiency of the evidence to prove damages as that issue is now moot.

■ Finally, Smith claims that the award of attorney fees to Shurtleff, pursuant to I.C. § 12–120(3), is erroneous because Shurtleff's pleadings did not specify the authority which entitled him to attorney fees and because "the relationship between an architect and a client is not a 'commercial transaction' within the meaning of I.C. § 12–120(3)." Our Supreme Court in *Full-*

*er v. Wolters,* 119 Idaho 415, 807 P.2d 633 (1991), specifically rejected I.C. § 12–120(3) as a basis for a fee award in an action for professional negligence. The Supreme Court held that "an action for legal malpractice is a tort action, and even though the underlying transaction which resulted in the malpractice was a 'commercial transaction,' attorney fees under 12–120(3) are not authorized." *Fuller v. Wolters,* 119 Idaho at 425, 807 P.2d at 643. Shurtleff provides no compelling reason why the same result should not obtain in an action to recover for alleged professional negligence of an architect. Accordingly, we conclude that the award of attorney fees cannot stand.

In summary, we affirm the judgment of the district court in favor of Shurtleff, but reverse the award of attorney fees. No attorney fees on appeal. Costs to respondent Shurtleff.

WALTERS, C.J., and SILAK, Acting Judge, concur.