652 P.2d 650

Curtis D. JOHNSON and Joan M. Johnson, husband and wife, Plaintiff-Appellant,

v.

Daniel A. JONES and Ruth E. Jones, husband and wife; Roger Schwartz; Joe Threadgill; Herbert Nagel; Elton Suko Realty; Hope Realty and First American Title Company of Northern Idaho, Defendants,

and

Herbert NAGEL, Defendant-Respondent,

v.

PIONEER TITLE COMPANY OF ADA COUNTY, Defendant and Third-Party Plaintiff,

v.

GEM VALLEY TITLE COMPANY, Third-Party Defendant.

No. 13676.

Supreme Court of Idaho.

Oct. 8, 1982.

Dan J. Rude, Coeur d'Alene, for plaintiff-appellant.

Richard E. Hall, Boise, for defendant-respondent.

BISTLINE, Justice.

This is an appeal from a summary judgment in favor of defendant-respondent Nagel, an attorney, on plaintiffs-appellants' complaint alleging legal malpractice. The judgment was entered *only* as to defendant Nagel; a certificate of finality was attached to the order granting summary judgment as required by I.R.C.P. 54(b), and the Johnsons perfected this appeal.

The underlying case arose out of the Johnsons' purchase of a mobile home sales business from several of the defendants. The earnest money agreement signed by both buyer and seller provides in pertinent part that the "buyer and seller [are] to share equally in attorney's fees." Defendant Nagel prepared the contract of sale. It is undisputed that Nagel reviewed the earnest money agreement prior to drawing up the sales contract and that the Johnsons did in fact pay one-half of Nagel's $250 fee. It is also undisputed that Nagel never spoke with the Johnsons or affirmatively stated that he would represent them. Nagel did not receive a check for his services directly from the parties; he was given a check by defendant First American Title Co. The Johnsons' complaint alleges that Nagel breached his duty to them by failing to disclose his possible conflict of interests and by failing to advise them of the need to inventory the business and their right to receive certain assets. The trial court concluded that (1) no attorney-client relationship existed between Nagel and the Johnsons other than for Nagel to act as scrivener[1] for the parties' independently negoti-

---

1. We surmise that the great majority of the bar would prefer to think that attorneys preparing

legal documents are necessarily more than mere scriveners. Were it otherwise, this im-

ated agreement, and (2) there was no showing that Nagel drew the contract other than in accordance with the parties' wishes.

## I.

We do not address nor does the case compel us to determine whether an attorney-client relationship existed between the Johnsons and Nagel. Assuming *arguendo* such a relationship did exist, we are able to dispose of the controversy without reaching the merits of that argument.

## II.

The more difficult question is whether a cause of action for legal malpractice may be maintained where the plaintiff admits that the services performed were the services sought, but alleges that compensable damages arose out of the failure of the attorney to fulfill fiduciary responsibilities imposed by the Code of Professional Conduct. Without foreclosing the possibility that such a cause of action might be maintained under some circumstances, we hold that the breach of fiduciary duty alleged *in this case* did not serve as the basis for an action for legal malpractice.

## A.

The Johnsons admit that they do not in any way base their complaint upon the contract of sale which Nagel actually drew up. Their complaint is based upon breach of three alleged duties: (1) a duty to advise the Johnsons as to the need to properly inventory the corporate assets; (2) a duty to advise the Johnsons as to their right to receive certain assets withheld by the seller; and (3) a duty to disclose the possible conflict of interest involved in drawing up a contract on behalf of both the buyer and the seller. As to the first two duties, they simply were not within the scope of the alleged relationship between Nagel and the Johnsons. The scope of an attorney's contractual duty to a client is defined by the purposes for which the attorney is retained. *See Kurtenbach v. TeKippe*, 260 N.W.2d 53 (Iowa 1977); *Delta Equipment & Construction Co. v. Royal Indemnity Co.*, 186 So.2d 454 (La.App.1966). *Cf. Beal v. Mars Larsen Ranch Corp.*, 99 Idaho 662, 586 P.2d 1378 (1978). Nagel was retained to draw up a contract, he did draw up a contract, and there is no allegation that the contract as drawn did not properly reflect the intentions of the parties. Had the Johnsons chosen to pay Nagel, an attorney, for strictly financial advice concerning the corporation and its accounts, they were certainly free to do so (although other professionals would probably be as competent to render such non-legal advice).[2] The Johnsons did not, however, ask for or pay for such advice, and Nagel was therefore under no duty to provide such advice. The Johnsons' allegation that Nagel had a duty to advise them as to their rights to receive certain corporate assets has no support in the record. Curtis Johnson's own deposition reveals that the problems with the sellers retaining certain assets arose from the sellers' unilateral post-contract actions, and that he had no questions as to his rights under the contract. The sellers' breach of the contract does not impute negligence to the attorney who drew the contract.

portant function would readily fall into the hands of the unlearned and untutored.

2. There is nothing in the record other than an allegation in the Johnsons' complaint, that would suggest that Nagel was retained to provide advice to the Johnsons on the economic condition of the purchased corporation or to explain to the Johnsons any of the legal consequences of the purchase. The deposition of Curtis Johnson reveals that although a realtor, Roger Schwartz, allegedly told Johnson that Nagel was an independent attorney representing both parties, when Johnson raised a question about the contract, Schwartz, according to Johnson's own deposition, told him to seek his own attorney. Additionally, Johnson admitted by way of his own deposition that he never sought advice from Mr. Nagel or contacted him in any way prior to the signing of the contract. Although the earnest money agreement is admittedly vague as to what the attorney's fees that the parties were to "share equally in" would purchase, it is clear from the record as a whole, and particularly in light of the amount of the fee actually paid to Nagel, that Nagel was retained solely to draw up a contract of sale.

## B.

As to whether Nagel had a duty to disclose a possible conflict of interest in drawing up a contract of sale for both the buyer and the seller, we agree that an issue of material fact is raised by the record on this point.[3] If, as the uncontroverted facts show, Nagel was aware or should have been aware that both the buyer and seller were paying his fee, he would be under a duty to disclose to both parties the possible conflict of interest and obtain the consent of both parties before proceeding with the contract. Opinion No. 30 (1962) of the Idaho State Bar Committee on Professional Ethics, issued in response to an inquiry submitted under the old Canon of Ethics (since superceded by the Code of Professional Responsibility), noted:

"The following inquiry has been submitted to the committee for its consideration and opinion:

'Is it proper for an attorney to prepare deeds, contracts and mortgages for a real estate broker or title insurance company who sends to the attorney the information concerning real estate transactions with the request the attorney prepare and return the appropriate legal documents? You may assume the attorney has no personal contact with the parties to the transactions.'

"The committee is informed the foregoing practice is quite prevalent in Idaho as well as in other states. Custom does not, however, make such conduct proper if in fact it is improper.

"Canon 35 provides that professional services of a lawyer should not be controlled or exploited by any lay agency which intervenes between client and lawyer. The lawyer's responsibilities and qualifications are individual. He should avoid all relations which direct the performance of his duties by or in the interest of such intermediary. A lawyer's relation to his client should be personal, and the responsibilities should be direct to his client.

"Canon 47 provides, 'No lawyer shall permit his professional services, or his name, to be used in aid of, or to make possible, the unauthorized practice of law by any lay agency, personal or corporate.'

"It is the opinion of this committee that an attorney cannot properly prepare legal instruments under the circumstances described in the inquiry.

. . . .

"The precise question before our committee was submitted to the Committee on Professional Ethics of the American Bar Association. The following excerpts are from the opinion of that committee:

'It is our opinion that a lawyer cannot properly prepare deeds, contracts, mortgages, etc., under the circumstances you have described. Such a transaction lacks the personal contact which should exist between attorney and client. Such relationship is necessary to a proper representation of any client.

'For example, does a client wish to take title individually or in his wife's name, or as a co-tenant or joint tenant or tenant by the entirety with his wife? This sometimes vital determination requires an understanding by the lawyer, of the source of the funds with which the property is being purchased, how previous property was held by a client and his wife and other possible tax considerations.

'It is obvious that few contracts of purchase are of such a nature that a word of explanation is not required by the purchaser or the seller. In this connection an attorney must be familiar with the title in order to determine what encumbrances exist in many instances must be prepared to explain the effect of restrictive covenants, easements, etc. If the premises are being

---

**3.** Although attorney Nagel represented in his deposition that he acted under the assumption that he was representing only the seller, he also admitted that he had reviewed the earnest money agreement, which clearly provided that each party would share equally in paying the attorney's fees.

sold subject to an existing mortgage, the principals will have questions regarding the due date of the existing mortgage, and various questions regarding the terms. The lawyer must also determine under what circumstances the seller can or should give a warranty deed and of course a purchaser is ordinarily entitled to whatever assurances of title are customarily given, in the absence of special circumstances.

'The disadvantage of drawing deeds or other instruments without opportunity to confer with a client are many as indicated above. It seems almost impossible for a lawyer to properly prepare a deed, contract or mortgage in total ignorance of existing problems and with no opportunity to discuss the situation with his client. Furthermore, there is no way to avoid a client relying on the lawyer's work if his name is printed on the deed or a statement is rendered for preparing certain papers. Most buyers or sellers would assume that the instruments had been prepared to the best of the lawyer's professional ability. Thus misrepresentation might occur or serious misunderstanding result.' "

Under the current Code of Professional Responsibility, DR 5–105 A provides:

"A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105C."

DR 5–105 B provides:

"A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105C."

Thus, representation of multiple clients may result in a violation of the Code unless:

"In the situations covered by DR 5–105A and B, a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." DR 5–105 C.

Although we conclude that there is a question of material fact as to whether Nagel breached a duty to the Johnsons to disclose the possible conflict of interest involved in drawing a contract for both the buyer and the seller, we uphold the trial court's legal conclusion that even if such a breach occurred, it would not support a cause of action for legal malpractice under the facts of this case.

■ Legal malpractice actions are an amalgam of tort and contract theories. *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 491 P.2d 421 (1971); *Higa v. Mirikitani,* 155 Haw. 167, 517 P.2d 1 (1973). We have already determined that Nagel breached no contractual duty owed to the Johnsons. As to the tort basis for the Johnsons' claim:

"The elements of a legal malpractice action are: (a) the existence of an attorney-client relationship; (b) the existence of a duty on the part of the lawyer; (c) failure to perform the duty; and (d) the negligence of the lawyer must have been a proximate cause of the damage to the client . . . .

"As to the burden of proof in such cases . . . '[t]he burden of proving that an attorney has been negligent or failed to act with proper skill and that damages resulted therefrom is on the plaintiff client' and . . . '[l]ikewise, the burden is on the plaintiff to show that the negligence of the attorney was a proximate cause of the client's damage.' " *Sherry v. Diercks,* 29 Wash.App. 433, 628 P.2d 1336, 1338 (1981) (citations omitted).

We agree with the Washington court as to the elements of a cause of action for legal malpractice and to allocation of the burden of proof in such cases.

■ In this case, the Johnsons have failed to introduce *any* evidence that would suggest that Nagel's failure to disclose the possible conflict of interest and obtain their consent before proceeding was a proximate cause of any of the damages alleged in their complaint.[4] The Johnsons do not claim that another attorney would have drafted the contract differently, nor do they claim that contacting another attorney would have prevented the damages which are alleged *as a result* of the *sellers'* and *broker's* actions. The sellers allegedly breached the contract, and we fail to see how having another attorney assist in drawing up the contract would have prevented this. Similarly, the Johnsons allege that the sellers' agent(s) misrepresented how profitable the corporation would be. While an accounting of the business may have been desirable, whether another attorney would or would not have advised the Johnsons to obtain such an accounting is simply too speculative to be capable of proof. In any event, the record is devoid of any evidence showing such a possibility. While we recognize that upon a motion for summary judgment all facts and inferences are to be construed most favorably toward the party against whom judgment is sought, if uncontroverted facts lead to a definite disposition as a matter of law, summary judgment is appropriate. *Smith v. Boise Kenworth Sales, Inc.,* 102 Idaho 63, 625 P.2d 417 (1981). Since there is nothing in the record that would support even an inference that Nagel's failure to disclose his possible conflict of interest proximately caused the damages alleged by the Johnsons, the district court's summary judgment is

*Affirmed.* Costs to respondent. No attorney fees.

BAKES, C.J., and McFADDEN and SHEPARD, JJ., concur.

DONALDSON, J., concurs in the result.

(McFADDEN, J., registered his vote prior to his retirement on August 31, 1982.)

---

4. Although Nagel argues that I.R.C.P. 56(e) requires filing of opposing affidavits, and that since the Johnsons did not file such affidavits, summary judgment was proper for that reason. I.R.C.P. 56(c), however, requires that a court consider "depositions ... on file" prior to entering summary judgment, and Curtis Johnson's deposition, which was on file at the time of the motion for summary judgment, was sufficient to satisfy the requirements of I.R.C.P. 56(e), *see Eckels v. Johnson,* 96 Idaho 264, 526 P.2d 1100 (1974).