**Paul S. DAMRON, Plaintiff–Appellant,**

**v.**

**Vern HERZOG, JR., Defendant–Appellee.**

No. 94–35043.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 1995.

Submission Deferred March 31, 1995.

Resubmitted May 23, 1995.

Decided Sept. 26, 1995.

Allen B. Ellis, Ellis, Brown & Sheils, Boise, Idaho, for plaintiff-appellant.

Mark S. Geston, Eberle, Berlin, Kading, Turnbow & McKleven, Boise, Idaho, for defendant-appellee.

Before: WRIGHT and BRUNETTI, Circuit Judges, and KELLEHER,* District Judge.

KELLEHER, District Judge:

The Idaho District Court held that the state of Idaho does not recognize a general duty of care owed by attorneys to former clients. Accordingly, the district court granted Herzog's motion for summary judgment. Damron appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse and remand to the Idaho District Court for trial.

## FACTS

In 1982 Plaintiff–Appellant Paul Damron (Damron) hired Defendant–Appellee Vern Herzog (Herzog) to prepare documents for the sale of Damron's funeral and cemetery business to Richard, Patricia, Wayne, and Marie Wheatley (collectively, "the Wheatleys"). As part of his representation, Herzog drafted a Stock Purchase Agreement (1982 Stock Purchase Agreement), which provided, among other things, for the Wheatleys to make payments to Damron. Herzog did not represent Damron on any further legal matters.

In 1983 Damron sued the Wheatleys regarding tax refunds due in connection with the 1982 sale. The Wheatleys filed a counterclaim against Damron, seeking sums allegedly owed by Damron as a result of advanced payments on funeral services (pre-need contracts). Eventually the counterclaim was dismissed with prejudice and judgment was entered in favor of Damron in February 1987. Herzog did not represent either party in this litigation.

After 1982 Herzog represented the Wheatleys on miscellaneous matters unrelated to Damron. During the first part of 1991, the Wheatleys consulted Herzog concerning their obligations under the 1982 Stock Purchase Agreement. Herzog advised the Wheatleys to discontinue further payments to Damron under the 1982 Stock Purchase Agreement. In addition, Herzog sent a letter to Damron, dated March 29, 1991, detailing the advice he had given to the Wheatleys.[1]

As a consequence of the letter, Damron instituted foreclosure proceedings against the Wheatleys. Shortly thereafter, the Wheatleys retained new counsel to advise them about their dispute with Damron. On August 20, 1991, pursuant to the advice of their new counsel, the Wheatleys filed suit against Damron. The Wheatleys' suit sought to stay the foreclosure proceedings on the ground that the Wheatleys were entitled to offsets for undisclosed liabilities, including the pre-need contracts that were the subject of the Wheatleys' previously dismissed counterclaim. This litigation was eventually resolved through a Compromise and Settlement Agreement (Settlement Agreement). The Settlement Agreement included modifications to the original purchase agreement and returned a portion of the business to Damron.

On March 26, 1993, Damron, an Arizona resident, filed a diversity action against Herzog in United States District Court for the District of Idaho. Damron's complaint alleged the facts described above. He further alleged that Herzog's advice to the Wheatleys proximately caused him over $155,000 in damages for legal defense costs incurred in resolving the 1991 conflict with the Wheatleys. Damron did not allege that Herzog revealed any confidential information to the Wheatleys obtained during Herzog's representation of Damron.

---

* Honorable Robert J. Kelleher, Senior United States District Judge, for the Central District of California, sitting by designation.

1. In this letter, Herzog informed Damron that he had advised the Wheatleys to "discontinue any further payment under the [1982 Stock Purchase Agreement]" due to the $340,000 in outstanding pre-need contracts allegedly still owed by Damron.

On September 7, 1993, Herzog moved for summary judgment. The district court held that Idaho law does not recognize a duty, breach of which is actionable at law, owed by attorneys to former clients beyond the duty of confidentiality.

Finding little guidance in Idaho law, we certified the following question to the Idaho Supreme Court:

Can a former client maintain an action under Idaho law for damages against an attorney that represents a new client, whose interests are materially adverse to the former client, in a matter that is substantially related to that on which the attorney represented the former client?

The Idaho Supreme Court rejected certification.

## DISCUSSION

### STANDARD OF REVIEW

■ Because the Idaho Supreme Court declined to clarify its law regarding attorney/client relationships, we now review *de novo* the district court's grant of summary judgment. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied relevant substantive law. *Id.* We also review *de novo* the district court's interpretation of state law. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

### ANALYSIS

■ Indisputably, Herzog breached his ethical duty of loyalty to his former client, Damron. *See* Idaho Rule of Professional Conduct (IRPC) 1.9. It is equally undisputed that Damron could have sought either to disqualify Herzog (if Herzog had continued representation of the Wheatleys), or to institute disciplinary proceedings against Herzog. *See, e.g., In re American Airlines, Inc.* 972 F.2d 605, 621–28 (5th Cir.1992) (finding disqualification proper when law firm engaged in impermissible conflicts of interest in substantially related matters), *cert. denied,*

*Northwest Airlines, Inc. v. American Airlines,* —— U.S. ——, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993); *Idaho State Bar v. Williams,* 126 Idaho 839, 847, 893 P.2d 202, 210 (1995) (upholding disbarment imposed for violations of the IRPC). However, Damron's appeal presents us with a more novel problem: whether, under Idaho law, Herzog owed Damron a continuing duty of care as to the same or substantially related matter of Herzog's initial representation of Damron. The district court expressly held that to find such a duty would be to extend current Idaho law "to create a duty to former clients beyond the duty of confidentiality." We reject the district court's conclusion. We do not think that a drastic extension of Idaho law is necessary; rather, we find in the common law a continuing duty owed by attorneys to former clients not to represent an interest adverse to a former client on a matter substantially related to the matter of engagement. When such a duty is breached, the former client may bring a cause of action at law.

### A. Attorney–Client Relationship

■ In order to bring a claim for malpractice, Damron must demonstrate the existence of an attorney-client relationship, a duty with respect to that relationship, breach of such duty, and damages flowing from the breach. *See Johnson v. Jones,* 103 Idaho 702, 706, 652 P.2d 650, 654 (1982).

■ Damron argues that for the purposes of a malpractice action, an attorney-client relationship existed at the time of Herzog's advice to the Wheatleys in 1991. Damron concedes that ordinarily an attorney-client relationship is terminated once representation has been completed. In this case, however, Herzog interposed himself into a matter substantially related to that for which he was previously retained by Damron. In so doing, Herzog created a situation in which the attorney-client relationship re-attaches. Under such circumstances, Damron argues, the duty of loyalty must continue after the representation is complete in the same way the duty of confidentiality continues. Because the duty of loyalty continues in this

respect, Damron argues, Herzog should be subject to a malpractice action for breach of that duty. We agree.

The Supreme Court of Idaho has stated that "the scope of an attorney's contractual duty to a client is defined by the purposes for which the attorney is retained." *Johnson*, 652 P.2d at 652. It is clear in this action that Herzog was retained by Damron to advise him regarding the sale of his funeral business and draw a contract for the terms of that sale. Payments under the terms of the contract were to continue until 1997. While this contract was still binding between Damron and the Wheatleys, Herzog undertook representation of the Wheatleys, whose interests were directly adverse to those of Damron.

For the purpose of Herzog's adverse representation in a substantially related matter, his attorney-client relationship with Damron was still in effect. We find it nonsensical to hold that the attorney-client relationship does not remain intact with respect to matters substantially related to the initial matter of engagement. Such a result is contrary to the basic tenets of attorney-client relationships. The Supreme Court has long held attorneys to stringent standards of loyalty and fairness with respect to their clients. In 1850, the Supreme Court stated:

> There are few of the business relations of life involving a higher trust and confidence than that of attorney and client, or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it.

*Stockton v. Ford*, 52 U.S. (11 How.) 232, 13 L.Ed. 676 (1850).

In the same vein, the Idaho Supreme Court has stated:

> The relationship of client and attorney is one of trust, binding an attorney to the utmost good faith in dealing with his client. In the discharge of that trust, an attorney must act with complete fairness, honor, honesty, loyalty, and fidelity in all his dealings with his client. An attorney is held to strict accountability for the performance and observance of those professional duties and for a breach or violation thereof, the client may hold the attorney liable or accountable.

*Beal v. Mars Larsen Ranch Corp., Inc.*, 99 Idaho 662, 667–668, 586 P.2d 1378, 1383–1384 (1978) (citation omitted).

Mindful of the historical importance of the public trust in the attorney-client relationship, we find that just as the attorney-client relationship remains intact for purposes of a continuing duty of confidentiality, so does it remain intact for purposes of a continuing duty of loyalty with respect to matters substantially related to the initial matter of engagement. Rather than being a drastic extension of Idaho law, such a result is a natural complement to the law as defined by Idaho courts.

### B. Duty of Loyalty Correlative to Duty of Confidentiality

Damron could have brought a cause of action based on breach of the duty of confidentiality. There is support in the law for the contention that where prior and current representations involve the same transaction, access to confidential information by the attorney in the course of the first representation is *presumed*. *See Flatt v. Superior Court*, 9 Cal.4th 275, 283, 885 P.2d 950, 954, 36 Cal.Rptr.2d 537, 541 (1994); *David Welch Co. v. Erskine & Tulley*, 203 Cal.App.3d 884, 891, 250 Cal.Rptr. 339, 342 (1988) ("the actual use or misuse of confidential information is not determinative; it is the *possibility* of breach which controls") (emphasis added). Due to the grave risk of disclosure, some courts conclude that attorneys simply may not undertake to represent a client whose interests are adverse to those of a former client in matters substantially related to the representation of the former client. *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265, 269 (S.D.N.Y.1953).

Although confidential information may not have been disclosed, Damron argues that

Herzog's advice to the Wheatleys necessarily involved decisions based on confidential information, which inevitably created the risk of a breach.

■ We agree that when an attorney engages in a conflict of interest on the same matter, he or she is in a position to act on the confidential information learned from the relationship with the first client, whether or not that information is actually disclosed or acted upon in advising the new client. *Maritrans GP, Inc. v. Pepper, Hamilton, & Scheetz,* 529 Pa. 241, 254, 602 A.2d 1277, 1283 (1992); *David Welch Co.,* 203 Cal.App.3d at 891, 250 Cal.Rptr. 339. Because this position creates such a grave risk of breach of confidence, it is anomalous to find that the duty of confidentiality does not have as its direct correlation a duty of loyalty. Therefore, because the duty of confidentiality remains intact with respect to Herzog's representation of Damron, the duty of loyalty also continues with respect to those matters substantially related to that representation.

An integral purpose of the rule of confidentiality is to encourage clients to fully and freely disclose to their attorneys all facts pertinent to their cause with absolute assurance that such information will not be used to their disadvantage. *T.C. Theatre Corp.,* 113 F.Supp. at 269; *See also Maritrans,* 602 A.2d at 1283. Allowing Damron's action to go forward does not place undue restrictions on Herzog's role as an attorney.

We note that our conclusion does not augment any of the obligations attorneys already bear under the rules that govern professional conduct. Under those rules, attorneys are prohibited from adverse representations on substantially related matters. *See* IRPC 1.9. Nor does our conclusion alter the ability of an attorney to engage in representation adverse to a former client after the former client's consent. *See id.* Although we find

that, in the narrow realm of the duty of loyalty, an attorney-client relationship continues after formal representation ends, our finding is for the limited purpose of malpractice analysis.

## C. Duty of Loyalty Based on Impermissible Conflict of Interest

Damron also argues that he can maintain a cause of action for breach of the common-law duty of loyalty upon which IRPC 1.9 is predicated.[2] Damron concedes that the preamble of the IRPC admonishes that " 'violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules ... are not designed to be a basis for civil liability.'" *Weaver v. Millard,* 120 Idaho 692, 697, 819 P.2d 110, 115 (Ct.App.1991) (quoting the preamble to the IRPC). Relying on the Pennsylvania Supreme Court's holding in *Maritrans,* however, Damron argues that he is suing for breach of the common-law fiduciary duty which forms the basis of IRPC 1.9.

In *Maritrans,* the Pennsylvania Supreme Court held that an attorney's subsequent representation of a client, whose interests were materially adverse to a former client in a matter substantially related to that in which he or she represented the former client, was an impermissible conflict of interest, giving rise to breach of a fiduciary duty. 602 A.2d at 1282. The Pennsylvania Supreme Court reasoned that an action at law was available because the common-law fiduciary duty imposed on attorneys prohibited them from engaging in impermissible conflicts of interest. *Id.* 602 A.2d at 1283 (citing *Stockton v. Ford,* 52 U.S. (11 How.) 232 (1850); *Woods v. Nat'l Bank & Trust Co.,* 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941); *T.C. Theatre Corp. v. Warner Bros. Pictures,* 113 F.Supp. 265 (S.D.N.Y.1953)).

---

2. Alternatively, a duty to avoid conflicts of interest may be found in the proposed *Restatements of the Law Governing Lawyers* Comment c to section 72 which states:

> After a client-lawyer relationship ends ... a lawyer still owes certain duties to a former client, for example, to ... avoid certain conflicts of interest (§§ 213–214). A breach of such duties may be remedied through a mal-

practice action in such circumstances coming within this section.
*Id.*
   While the Idaho courts have not adopted the proposed *Restatement,* several other state and federal courts have followed the proposed *Restatement,* albeit in different circumstances. *See, e.g., Petrillo v. Bachenberg,* 139 N.J. 472, 483–484, 655 A.2d 1354, 1359–60 (1995).

We do not find it necessary to take such a novel approach here. Rather, we find the basis for a continuing duty in the fact that the attorney-client relationship remains intact under certain limited circumstances. Certainly with respect to the specific subject matter of the initial representation, there is a continuing duty of loyalty.

However, the court's holding in *Maritrans* is not inconsistent with the present state of Idaho law. In fact, in *Johnson v. Jones*, the Idaho Supreme Court concluded that "there is a question of material fact as to whether [the defendant-attorney] breached a duty to the [plaintiffs] to disclose the possible conflict of interest involved in drawing up a contract for both the buyer and the seller." 103 Idaho at 706, 652 P.2d at 654. Although the court ultimately affirmed dismissal of the claim based on plaintiff-appellants' failure to show any triable issue of fact as to causation, the court did not foreclose the possibility of an action at law based on a breach of duty caused by an impermissible conflict of interest.[3]

We need not decide whether the cause of action alluded to in *Johnson* exists. Rather, we find that a duty of loyalty to a former client is coterminous with the duty of confidentiality with respect to matters substantially related to the initial matter of engagement. Accordingly, the judgment of the district court is reversed and remanded for trial.

---

**3.** In *Beal v. Mars Larsen,* the Supreme Court of Idaho recognized that an impermissible conflict of interest ordinarily exists in a situation where an attorney represents both the buyer and seller in a real estate transaction without the consent of both parties. 99 Idaho at 668, 586 P.2d at 1384. However, because the attorney in *Beal* was deemed to be merely a "scrivener", the court found that no misconduct had occurred and thus the attorney was not liable for damages. *Id.*