## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 37992

LOIS M. BISHOP, personal representative
of PATRICIA J. SHELTON, deceased,

    Plaintiff-Respondent,

v.

R. BRUCE OWENS and JANE DOE
OWENS, husband and wife, and the marital
community composed thereof; OWENS &
CRANDALL, PLLC, a limited liability
company operating in the State of Idaho; R.
BRUCE OWENS and JEFFREY J.
CRANDALL, individually, and in their
capacities as principals, managers, agents,
partners, representatives, and employees of
OWENS & CRANDALL, PLLC,

    Defendants-Appellants.
_____
OWENS & CRANDALL, PLLC,

    Third-Party Plaintiff,

v.

IDAHO STATE INSURANCE FUND,

    Third-Party Defendant.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Coeur d'Alene, September 2011 Term

2012 Opinion No. 15

Filed: January 12, 2012

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho,
Kootenai County. Hon. John P. Luster, District Judge.

The judgment of the district court is <u>reversed</u>. Costs are awarded to appellants.
No attorney's fees are awarded.

Ramsden & Lyons, LLP, Coeur d'Alene, for appellants. Michael G. Ramsden
argued.

Elsaesser, Jarzabek, Elliott & McDonald, Chtd., Sandpoint, for respondent.
Joseph Jarzabek argued.

_____

1

W. JONES, Justice

## I. NATURE OF THE CASE

Patricia Shelton ("Shelton") filed suit asserting breach of contract and legal malpractice based on an alleged breach of an attorney-client relationship and contingency fee agreement. During the pendency of this action, Shelton passed away. Lois Bishop ("Bishop") sought to assert Shelton's claims as her personal representative. R. Bruce Owens, Jeffrey Crandall, and Owens and Crandall, PLLC (herein referred to collectively as "Owens") asserted that the legal malpractice claim abated upon Shelton's death and that the breach of contract claim did not state a claim. Owens now appeals the district court's decision holding that Patricia Shelton's claim for legal malpractice did not abate upon her death and that Shelton's breach of contract action stated a claim. Furthermore, Owens seeks review of the district court's decision granting Lois Bishop's Motion to Substitute as Plaintiff. Because Patricia Shelton's legal malpractice claim sounds in tort and abated upon her death, and her breach of contract claim fails to state a claim, the district court erred in denying Owens's Motion for Summary Judgment and in granting Bishop's Motion to Substitute as Plaintiff.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 1997, during the course of her employment, Patricia Shelton was involved in an automobile accident that left her a quadriplegic. The Idaho State Insurance Fund provided her with workers' compensation benefits, including medical benefits. On September 21, 2006, Shelton was admitted to North Idaho Advanced Care Hospital ("Advanced Care") to wean her off of a ventilator on which she was dependent. Advanced Care's treatment of Shelton resulted in further injury. Thereafter, Shelton retained attorney R. Bruce Owens to represent her in a medical malpractice claim against Advanced Care. Shelton entered into an attorney-client relationship with Owens and signed a contingent fee contract on December 25, 2007.

In September of 2008, Owens represented Shelton in mediation with Advanced Care, Idaho State Insurance Fund, and Advanced Care's insurer. Shelton's medical malpractice claim was settled on February 6, 2009, in the amount of $1,150,000. Shelton, as a requirement of the settlement, signed the Full Release and Settlement Agreement releasing the hospital and the insurer from liability. After deducting costs and Owens's contingency fee, Idaho State Insurance Fund sought the remainder of the settlement funds in the amount of $664,543.54, citing its subrogation claim under I.C. § 72-223. Idaho State Insurance Fund's subrogation claim was later settled in the amount of $270,000. Owens did not represent Shelton during the settlement.

2

Patricia Shelton alleged that prior to her signing the Full Release and Settlement Agreement, Owens failed to inform her of the consequences of the settlement and release in regard to Idaho State Insurance Fund's subrogation claim. As a result, Shelton filed her legal malpractice and breach of contract claims on May 6, 2009, contending that Owens breached his duty to inform her of Idaho State Insurance Fund's subrogation claim and that the medical malpractice settlement could terminate or reduce payment of compensation benefits paid by the Idaho State Insurance Fund. Shelton further contended that Owens breached his duty to seek a partial lump sum settlement, approved by the Idaho Industrial Commission, settling the subrogation interest in her claim.

During the pendency of this action, on or around November 10, 2009, Shelton passed away. Owens later filed and served the Second Motion for Summary Judgment on May 6, 2010. Thereafter, on May 10, 2010, Shelton's attorney Joseph Jarzabek filed its Motion to Substitute as Plaintiff pursuant to Rule 25(a)(1) of the Idaho Rules of Civil Procedure, seeking to appoint Bishop as personal representative. The district court denied the Second Motion for Summary Judgment by Memorandum Opinion and Order on July 21, 2010. Owens made timely application to the district court to appeal by permission under I.A.R. 12(b), which was denied. On October 20, 2010, this Court granted Owens's Motion for Appeal by Permission pursuant to I.A.R. 12(c). Owens timely filed the Notice of Appeal on November 8, 2010.

### III. ISSUES ON APPEAL

1. Whether the district court erred in determining that Patricia Shelton's claim for legal malpractice did not abate upon her death?

2. Whether the district court erred in determining that Patricia Shelton's claim for breach of contract stated a claim upon which relief can be granted?

3. Whether the district court erred in ruling that Shelton's claim for legal malpractice was not barred by the economic loss rule?

4. Whether the district court erred in granting the Motion to Substitute as Plaintiff?

5. Whether Lois Bishop is entitled to attorney's fees on appeal according to I.C. § 12-120(3) and I.C. § 12-121 in her capacity as personal representative of Patricia Shelton?

### IV. STANDARD OF REVIEW

On October 19, 2010, this Court granted Owens's Motion for Appeal by Permission pursuant to I.A.R. 12(c). "Generally, an appeal under I.A.R. 12 will be permitted when the order involves a controlling question of law as to which there is substantial grounds for difference of

opinion and that an immediate appeal may materially advance the orderly resolution of the litigation." *Kindred v. Amalgamated Sugar Co.*, 118 Idaho 147, 149, 795 P.2d 309, 311 (1990). As this appeal involves controlling questions of law, this Court exercises free review over those issues. *Infanger v. City of Salmon*, 137 Idaho 45, 47, 44 P.3d 1100, 1102 (2002).

## V. ANALYSIS

### A.    Shelton's Claim for Legal Malpractice Abated upon Her Death

The abatement rule holds that in the absence of a legislative enactment addressing the survivability of a claim, the common law rules govern. *See* I.C. § 73-116 ("The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these compiled laws, is the rule of decision in all courts of this state."); *see also Evans v. Twin Falls Cnty.*, 118 Idaho 210, 215, 796 P.2d 87, 92 (1990). Under the common law, claims arising out of contracts generally survive the death of the claimant, while those sounding in pure tort abate. *See Helgeson v. Powell*, 54 Idaho 667, 674–79, 34 P.2d 957, 960–61 (1934); *Kloepfer v. Forch*, 32 Idaho 415, 417–18, 184 P. 477, 477 (1919).

The Idaho Legislature addressed whether negligence claims abate in amending I.C. § 5-327(2) to provide that negligence claims, including legal malpractice claims, do not abate on the death of the injured person. Because the Idaho Legislature failed to provide express language of retroactivity, I.C. § 5-327(2) is inapplicable to the present action, which arose prior to the statute's effective date.[1] *See* I.C. § 73-101 (asserting that "[n]o part of these compiled laws is retroactive, unless expressly so declared"); *see also Henderson v. Smith*, 128 Idaho 444, 448, 915 P.2d 6, 10 (1996). Thus, this Court's ruling is dependent on whether Patricia Shelton's legal malpractice claim sounds in pure tort or arises out of contract under the common law. *See* I.C. § 73-116; *Helgeson*, 54 Idaho at 674–79, 34 P.2d at 960–61; *Kloepfer*, 32 Idaho at 417–18, 184 P. at 477.

This Court previously held that legal malpractice actions sound in tort in the context of attorney's fees claims under I.C. § 12-120(3). *See Rice v. Litster*, 132 Idaho 897, 980 P.2d 561 (1999); *see also Fuller v. Wolters*, 119 Idaho 415, 807 P.2d 633 (1991). In restricting attorney's fees claims to commercial transactions under I.C. § 12-120(3), this Court held "that an action for legal malpractice is a tort action . . . even though the underlying transaction which resulted in the malpractice was a 'commercial transaction . . . .'" *See Rice*, 132 Idaho at 901, 980 P.2d at 565

---

[1] I.C. § 5-327(2) was amended effective July 1, 2010.

(quoting *Fuller*, 119 Idaho at 425, 807 P.2d at 643). Although *Rice* and *Fuller* have since been overruled regarding their prohibition of I.C. § 12-120(3) attorney's fees claims in the context of legal malpractice actions, this Court recognized that they were not overruled on the characterization of legal malpractice actions as sounding in tort. *See City of McCall v. Buxton*, 146 Idaho 656, 664–65, 201 P.3d 629, 637–38 (2009) (holding that commercial transactions under § 12-120(3) are not limited to contract actions and may include legal malpractice tort actions even in the absence of an attorney-client contract); *see also Soignier v. Fletcher*, 151 Idaho 322, 256 P.3d 730 (2011) (holding that legal malpractice actions sound in tort, but I.C. § 12-120(3) only requires that there be a commercial transaction, which may be satisfied with the establishment of an attorney-client relationship).

As this Court previously recognized, "[l]egal malpractice actions are an amalgam of tort and contract theories." *See Johnson v. Jones*, 103 Idaho 702, 706, 652 P.2d 650, 654 (1982). The tort basis of legal malpractice actions flows from the elements of legal malpractice: "(a) the existence of an attorney-client relationship; (b) the existence of a duty on the part of the lawyer; (c) failure to perform the duty; and (d) the negligence of the lawyer must have been a proximate cause of the damage to the client . . . ." *Id.* (quoting *Sherry v. Diercks*, 29 Wash. App. 433, 437, 628 P.2d 1336, 1338 (1981)). "The scope of an attorney's contractual duty to a client is defined by the purposes for which the attorney is retained." *Johnson*, 103 Idaho at 704, 652 P.2d at 652; *Fuller*, 119 Idaho at 425, 807 P.2d at 643 (holding that the tort of legal malpractice is also a breach of the attorney-client relationship). Breach of an attorney's duty in negligence is a tort. *See Harrigfeld v. Hancock*, 140 Idaho 134, 136, 90 P.3d 884, 886 (2004); *Johnson*, 103 Idaho at 704, 706–07, 652 P.2d at 652, 654–55. The contract basis of legal malpractice actions is the failure to perform obligations directly specified in the written contract. *See Johnson*, 103 Idaho at 704, 706–07, 652 P.2d at 652, 654–55 (holding that a breach of contract claim would arise if the attorney did not do what he promised to do in the contract, e.g., failing to draw up a contract of sale). Thus, under the abatement rule, breach of duty is an action in tort, not contract; that is, unless an attorney fool-heartedly contracts with his client guaranteeing a specific outcome in the litigation or provides for a higher standard of care in the contract, he is held to the standard of care expected of an attorney. Breach of that duty is a tort.

As further elaborated by Justice Jim Jones in his special concurrence, the contours of the duties owed by an attorney to his or her client are defined by the Idaho Rules of Professional Conduct. If an attorney and client want to provide for a higher standard of care, they may do so

5

by express language in the contract. Here, the standard of care in the contract is essentially the same as in any attorney-client relationship. Because this claim sounds in tort, it abated upon Patricia Shelton's death.

Owens also asserts that the personal nature of the attorney-client relationship suggests that legal malpractice claims are not assignable and, therefore, abate under *MacLeod v. Steele*, 43 Idaho 64, 75, 249 P. 254, 257 (1926). This Court need not specifically address this issue because Shelton's legal malpractice claim abated.

**B.    Patricia Shelton's Breach of Contract Claim Fails to State a Claim upon Which Relief Can Be Granted**

Owens relies on *Trimming v. Howard*, 52 Idaho 412, 16 P.2d 661 (1932), and *Hayward v. Valley Vista Care Corp.*, 136 Idaho 342, 33 P.3d 816 (2001), in asserting that the district court erred in holding that Patricia Shelton may bring her legal malpractice and breach of contract claims in the same cause of action. Bishop asserts that *Hayward* is inapplicable because it relates to medical malpractice claims and was based on a statute that strictly required all actions related to medical care to be pursued in the context of the local standard of care. *See Hayward*, 136 Idaho at 349–51, 33 P.3d at 823–25.

*Trimming* and *Hayward* were actions where the plaintiffs tried to assert contract claims in medical malpractice suits in order to avoid the statute of limitations defense applicable to tort claims. *Id.; Trimming*, 52 Idaho at 415–17, 16 P.2d at 662–63. Specifically, this Court rejected such claims, asserting that they pertain to "the provision of or failure to provide health care" under I.C. § 6-1012. *Hayward*, 136 Idaho at 349–50, 33 P.3d at 823–24 (quoting I.C. § 6-1012). This Court affirmed the claims as malpractice tort actions, "regardless of the label assigned to them." *Id.* at 350, 33 P.3d at 824. Thus, Owens contends that where legal malpractice actions based on breach of duty are asserted, not based on any obligations or undertakings specifically provided in a contract, a claim in tort remains the sole cause of action. *See Trimming*, 52 Idaho at 415–17, 16 P.2d at 662–63; *Hayward*, 136 Idaho at 349–50, 33 P.3d at 823–24.

Although the medical malpractice cases on which Owens relies are governed by a specific statute, the fact that a proponent labels his or her action as sounding in contract as well as malpractice does not make the underlying action contract. The "theory" of relief sought is not different. A holding to the contrary would create a per se breach of contract action in every legal malpractice action. Legal malpractice has traditionally been treated as the proper claim where an attorney breaches his or her duty, which arises from the attorney-client relationship.

6

As noted in the previous section, because the contingent fee agreement in this matter contained no express language providing for a higher standard of care, the duty owed by Owens is not defined by the contingent fee agreement. The language in the contingent fee agreement that "[a]ttorneys shall represent Client in said matter and do all things necessary, appropriate, or advisable, in regard thereto" is not materially different from the standard applied in the legal malpractice claim. Thus, this action is really a legal malpractice claim disguised as a contract claim. A person cannot change a tort action into a contract action simply by labeling it as such. *Hayward*, 136 Idaho at 350, 33 P.3d at 824.

As previously discussed, professional malpractice actions traditionally have been characterized as tort actions in the context of the statute of limitations. To hold that this claim is clearly a separate contract cause of action would render the two year statute of limitations applying to legal malpractice actions moot. *See Lapham v. Stewart*, 137 Idaho 582, 585–87, 51 P.3d 396, 399–401 (2002). It would also call into question matters such as the standard of care regarding legal malpractice actions, which is to comply with the local standard of care by an attorney, as well as the application of the economic loss rule to legal malpractice claims.

Therefore, this Court holds that Bishop's breach of contract claim, which asserts the same claim as the legal malpractice theory, which has traditionally been treated as the proper claim, fails to state a claim upon which relief can be granted.

**C.**      **The Issue Whether Shelton's Claim for Legal Malpractice Is Barred by the Economic Loss Rule Does Not Need to be Addressed Because Shelton's Claim for Legal Malpractice Abated**

In the Notice of Appeal, Owens argues that the district court erred in ruling that Shelton's claim for legal malpractice is not barred by the economic loss rule. This issue does not need to be addressed because Shelton's claim for legal malpractice abated upon her death.

**D.**      **The Substitution of Lois Bishop as Personal Representative for Patricia Shelton Was Improper Because Shelton's Claim Extinguished as per I.R.C.P. 25(a)(1)**

The basis of Owens's contention that the district court erred in allowing the substitution of Lois Bishop is that substitution of the parties under I.R.C.P. 25(a)(1) is only applicable "[i]f a party dies and the claim is not thereby extinguished . . . ." Since the legal malpractice claim abated and the contract claim failed to state an independent action, the district court erred in allowing the substitution of Bishop.

**E.**      **Bishop Is Not Entitled to Attorney's Fees Under I.C. § 12-120(3) and I.C. § 12-121**

7

Idaho Code section 12-120(3) and Idaho Code section 12-121 apply to prevailing parties in a civil action. Bishop is not the prevailing party in this action. Therefore, this Court denies Bishop's attorney's fees claims under I.C. § 12-120(3) and I.C. § 12-121.

## VI. CONCLUSION

Patricia Shelton's legal malpractice claim abated upon her death, and her breach of contract claim fails to state a claim upon which relief can be granted. Therefore, the Motion to Substitute as Plaintiff was improperly granted under I.R.C.P. 25(a)(1). Bishop is not entitled to attorney's fees because she is not the prevailing party.

The judgment of the district court is reversed. Appellants did not request attorney fees. Costs are awarded to the Appellants.

Chief Justice BURDICK and Justice EISMANN, CONCUR.

J. JONES, J., specially concurring.

I concur in the Court's opinion but write to make some additional observations regarding the matters at issue.

Characterizing a breach of duty action against an attorney has never been easy because, by definition, an attorney-client relationship arises out of some form of contract, but a lawyer's duty of care, which by implication becomes a part of that contract, is not necessarily spelled out in the contract terms agreed upon by the parties. A lawyer's duty to a client is established by professional obligations developed by the Idaho State Bar and this Court. The contours of an Idaho lawyer's duty of care are generally spelled out in the Idaho Rules of Professional Conduct (I.R.P.C.). "An attorney's duty arises out of the contract between the attorney and his or her client." *Harrigfeld v. Hancock*, 140 Idaho 134, 137, 90 P.3d 884, 887 (2004). The things an attorney is obligated to do for a client depend on the type of matter or proceeding that the attorney undertakes for the client. The attorney is obligated to observe the duty of care attendant to such matter or proceeding. An attorney may not make a contract with the client to limit compliance with his duty of care, except as authorized by the I.R.P.C., such as obtaining informed consent to reveal confidential client information (I.R.P.C. 1.6(a)) or obtaining informed consent to represent clients with conflicting interests (I.R.P.C. 1.7(b)(4)).

As the Court notes in its Opinion, a lawyer can agree to do things or perform tasks above and beyond those provided for in, and not prohibited by, the I.R.P.C. Such additional undertakings are not required by the I.R.P.C. or the lawyer's general duty of care and, therefore,

8

are strictly contractual in nature. Such undertakings should be enforceable in a contract action and should survive the death of the client, just as any other contractual obligation.

For instance, I.R.P.C. 1.5 spells out the general requirements pertaining to fees charged by attorneys, but the rule does not spell out the specific provisions that must be written into the fee agreement. I.R.P.C. 1.5 states the general contours of what an attorney may do and what the attorney must not do. Violation of I.R.P.C. 1.5 may give rise to a tort action for malpractice. Violation of the specific terms of the agreement made between the lawyer and the client, where there is no claim that the provisions of I.R.P.C. 1.5 were violated, gives rise to a contract action.

In this case, the breach of contract claim is couched in terms of Owens having violated his contractual duty to Shelton. It is claimed that Owens failed to adequately inform Shelton about the operation of I.C. § 72-223, resulting in the fact that Shelton might end up with nothing if the Idaho State Insurance Fund exercised its full right of subrogation. Owens was required to adequately inform Shelton in this regard but that duty arose under I.R.P.C. 1.4, rather than the Contingent Fee Contract (Contract) between the parties. In her briefing, Bishop also contends that Owens specifically violated paragraph 1 of the Contract, providing that, "[Owens' firm] shall represent [Shelton] in said manner and do all things necessary, appropriate, or advisable, in regard thereto, whether the same be by representation in legal proceedings or otherwise." However, these are obligations that Owens had under I.R.P.C. 1.1 and 1.3. Since the alleged breaches of duty for which Shelton sued Owens are duties emanating from the I.R.P.C., the action is tort in nature.

Had Shelton sued Owens for violating the specific fee provisions of the Contract, whereby she agreed to pay Owens "forty percent (40%) of the gross recovery of any and all funds received in settlement or recovered after filing an action in any Court," a contract action would have been appropriate. It appears from the record that Owens took a fee of $460,000 off of the top of the $1,150,000 settlement with Advance Care, representing 40% of the total settlement, along with reimbursing himself for $25,456.46 in costs. That left a total of $664,543.54, all of which (and much more) was subject to the Insurance Fund's subrogated claim. Other counsel negotiated a reduction of the subrogated claim down to $270,000, leaving a balance of $394,543.54. There is no indication as to whether such other counsel charged an additional fee for such negotiation with the Insurance Fund, nor is there any indication as to whether any portion of the $460,000 fee obtained by Owens was taken into account as the Insurance Fund's responsibility for the Advance Care settlement under a common fund theory.

9

The record does not disclose how the balance was distributed. Shelton possibly could have made the claim that Owens' fee should have been calculated on some amount other than $1,150,000, where he obviously knew that the subrogated claim would greatly exceed any amount left after he obtained the full amount of his fee. However, the contract claim pursued by Shelton, and then Bishop, did not involve this contractual question so no valid contact claim was presented on appeal.

HORTON, J., dissenting.

I respectfully dissent from the Court's conclusion that Shelton's claim abated upon her death. I do so because I believe that her claim of breach of contract stated a claim upon which relief can be granted, and therefore, the cause of action did not abate.

This Court has long recognized that the duties owed in tort cases are those imposed by law, and do not have their origins in the explicit terms of the parties' contract.[2] Recently, in *Weinstein v. Prudential Property and Cas. Ins. Co.*, 149 Idaho 299, 233 P.3d 1221 (2010), this Court addressed an earlier decision in *Inland Group of Companies, Inc. v. Providence Washington Insurance Co.*, 133 Idaho 249, 985 P.2d 674 (1999). In *Inland Group*, the Court upheld an award of punitive damages for the tort of bad faith where the insurance company had failed to timely pay the undisputed portion of a claim. *Id*. at 259, 985 P.2d at 684. Although the insurance policy at issue contained an arbitration provision relating to disputed claims, this Court rejected the insurer's claim that it had no duty to pay under the policy until the insured complied with all provisions of the policy including arbitration. *Id*. at 255-56, 985 P.2d at 680-81. *Weinstein* explained the reasons for this decision as follows:

> In rejecting that argument we stated, "The duty to act in good faith exists at all times during the settlement process. Furthermore, *a claim for breach of the obligation of good faith and fair dealing is independent of a technical breach of the obligation to pay*." [*Inland Group*, 133 Idaho] at 255, 985 P.2d at 680. We added, "The tort recognized by this Court in *White* [*v. Unigard Mutual Insurance Co.*, 112 Idaho 94, 730 P.2d 1014 (1986)] is grounded upon the breach of this independent implied contractual duty of good faith. *It cannot be properly regarded as a claim for tortious breach of the explicit terms of the contract such*

---

[2] In this regard, I take issue with the majority's reliance on *Johnson v. Jones*, 103 Idaho 702, 652 P.2d 650 (1982), for the proposition that "[t]he contract basis of legal malpractice actions is the failure to perform obligations directly specified in the written contract." However, *Johnson* cannot be said to hold that an attorney's negligent breach of the express terms of a written contract is only actionable in tort because in *Johnson* there was no written contract. Rather, the Court in *Johnson* noted that it was "undisputed that [the attorney] never spoke with the [plaintiffs] or affirmatively stated that he would represent them." *Id*. at 703, 652 P.2d at 651. Indeed, the Court noted that "the earnest money agreement is admittedly vague as to what the attorney's fees that the parties were to 'share equally in' would purchase . . . ." *Id*. at 704 n. 2, 652 P.2d at 652 n. 2. The Court concluded that the attorney "was retained solely to draw up a contract of sale." *Id*.

10

*as the duty to pay*." 133 Idaho at 255, 985 P.2d at 680.

149 Idaho at 322, 233 P.3d at 1244 (emphasis added).

In *Baccus v. Ameripride Services, Inc.*, 145 Idaho 346, 179 P.3d 309 (2008), this Court explained the interplay between contract and tort actions in similar terms:

> In addition, "[i]n order for a cause of action to arise in tort, Claimants must establish the breach of a tort duty, separate and apart from any duty allegedly created by the contract." *Vickers* [*v. Hanover Constr. Co., Inc.,* 125 Idaho 832, 835, 875 P.2d 929, 932 (1994)]. Furthermore, "negligent conduct and breach of contract are two distinct theories of recovery. Ordinarily, breach of contract is not a tort, although a contract may create the circumstances for the commission of a tort." *Just's Inc. v. Arrington Constr. Co.,* 99 Idaho 462, 468, 583 P.2d 997, 1003 (1978). But, "[t]he mere *negligent breach or non-performance of a contract will not sustain an action sounding in tort, in the absence of a liability imposed by law independent of that arising out of the contract itself*." *Steiner Corp. v. Am. Dist. Tel.,* 106 Idaho 787, 790, 683 P.2d 435, 438 (1984) (internal quotations omitted).

145 Idaho at 350, 179 P.3d at 313 (emphasis added).

In *Baccus*, Justice Warren Jones continued, emphasizing that tort duties arise by operation of law, whereas contractual duties arise from the mutual assumption of rights and duties by the contracting parties:

> In *Just's,* this Court explained the difference between the purposes of contract law and tort law thusly:
>> The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. *The duties of conduct which give rise to them are imposed by the law*, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. . . . Contract actions are created to protect the interest in having promises performed. *Contract obligations are imposed because of conduct of the parties manifesting consent*, and are owed only to the specific individuals named in the contract.
> *Just's,* 99 Idaho at 468, 583 P.2d at 1003 (quoting W. Prosser, *Handbook of the Law of Torts* § 92 at 613 (4th ed. 1971)).

*Id*. at 350-511, 179 P.3d at 313-14 (emphasis added).

In *Hudson v. Cobbs*, 118 Idaho 474, 797 P.2d 1322 (1990), this Court similarly emphasized that the source of a duty in tort is not found within the terms of the parties' contract. The Court quoted its earlier decision in *Carroll v. United Steelworkers of America,* 107 Idaho 717, 719, 692 P.2d 361, 363 (1984), which held that "an alleged failure to perform a contractual obligation is not actionable in tort. . . . 'To found an action in tort, there must be a breach of duty

apart from *non-performance* of a contract.'" 118 Idaho at 478, 797 P.2d at 1326 (internal citations omitted, emphasis original). Even prior to *Carroll*, this Court repeatedly made similar pronouncements. *See Steiner Corp.*, 106 Idaho at 790-91, 683 P.2d at 438-39 ("a clear duty must be shown to exist by operation of law, separate and apart from the contractual duty . . . ."); *Taylor v. Herbold,* 94 Idaho 133, 138, 483 P.2d 664, 669 (1971) ("Ordinarily, a breach of contract is not a tort. A contract may, however, create a state of things which furnishes the occasion for a tort."); *Wallace v. Hartford Fire Ins. Co.*, 31 Idaho 481, 486-87, 174 P. 1009, 1010 (1918) ("to determine the form in which redress must be sought, it is necessary to ascertain source or origin. If it be found that right or duty was created independent of the consent of the parties concerned, the action is in tort; if because of such consent, it is on contract.").

In *Harrigfeld v. Hancock,* 140 Idaho 134, 137, 90 P. 3d 884, 887 (2004), this Court stated that "[a]n attorney's duty arises out of the contract between the attorney and his or her client." We have recently reiterated this language from *Harrigfeld* in *Soignier v. Fletcher*, 151 Idaho 322, ___, 256 P.3d 730, 734 (2011). However, the holding in *Harrigfeld* was not based upon the express terms of the attorney-client contract; rather, the Court noted that the existence of a duty was a question of law. 140 Idaho at 138, 90 P.3d at 888. In determining whether a duty would be imposed by operation of law, the Court then conducted a balance-of-the-harms test. *Id*.

I do not think that *Hayward v. Valley Vista Corp.*, 136 Idaho 342, 33 P.3d 816 (2001), discussed by the majority, provides guidance for resolution of the instant appeal. Although the *Hayward* Court addressed the holding in *Trimming v. Howard,* 52 Idaho 412, 16 P.2d 661 (1932), its decision that plaintiff was precluded from bringing a contract action against a health care provider was based upon an application of I.C. § 6-1012. *Id*. at 350, 33 P.3d at 824. In *Trimming*, this Court did make the following statement, which sounds much like the holding of the majority in the present case: "Respondent is not arraigned for breach of contract, but for delinquencies incidental to its performance. As alleged, these are the very foundation of the action, and, if true, constituted nothing but malpractice. The gist of a malpractice action is negligence, not a breach of the contract of employment." 52 Idaho at 416, 16 P.2d at 662.

However, this statement followed a traditional statement, along the lines previously discussed, distinguishing the sources of duties imposed in tort and contract cases:

> The complaint primarily alleges that a contract for treatment was entered into between the parties. So far so good. But, in the performance of that contract, respondent impliedly contracted that he would exercise ordinary and reasonable care (48 C. J. 1115, par. 101), the [sic] *which is another way of saying that such duty is imposed by law. Denning v. State*, 123 Cal. 316, 55 P. 1000, 1002,

12

enunciating as follows:

> The contract of employment has nothing whatever to do with the liability, except to create a duty on the part of the employer, - a duty not expressed in the contract, and for the violation of which the contract of employment furnishes no rule or standard for the estimation of damages. *Nor is the action grounded upon the contract, but upon the duty springing from the relation created by it, viz., that of employer and employee, and under the old system of pleading was always classed as an action ex delicto.*

*Id.* at 415, 16 P.2d at 662 (emphasis added).

Based upon the foregoing, I believe that the body of law discussed both in the majority opinion and in this dissent recognizes that the duties imposed by operation of law in malpractice actions flow from the relationship created by the contractual relationship of the parties, not the contract itself.

In this case, Owens specifically undertook and promised that "[a]ttorneys shall represent Client in said matter and do all things necessary, appropriate, or advisable, in regard thereto." There is no suggestion that Owens was incompetent or otherwise lacked the capacity to contract. There is likewise no suggestion that he was unaware of the nature of his undertaking (after all, it was his firm's form contract), or that he did not voluntarily enter into the agreement, or that there was no consideration for his promise. In the absence of such circumstances as might permit avoidance of the terms of an express contract, I am unaware of any prior instance where this Court has determined that a party may be relieved of liability for the breach of an express term of a written contract on the basis that the "wrong theory" was advanced by plaintiff.

The majority expresses its concern that "[a] holding to the contrary would create a per se breach of contract action in every legal malpractice action." I would first note that this is a gross overstatement. The position I espouse only applies in instances involving express contractual undertakings. In this case, no one forced Owens to enter a contract prescribing the manner in which he would represent his client. Had he not elected to identify the manner in which he would perform his services, his duty to his client would have been imposed by law, this action would sound in tort, and I would be joining with the majority.

I, too, have concern for the result of this appeal. There is the very real concern that the decision of this Court will reinforce the perception, shared by many in our society, that courts will go out of their way in order to protect members of the bar.[3] My position, which I believe to

---

[3] This perception may well evaporate when trial courts begin to instruct juries in legal malpractice cases that the attorney's duty is to "do all things necessary, appropriate or advisable, in regard" to the subject of representation.

13

be well-grounded in existing law, simply recognizes that lawyers do not hold a special place in society that insulates them from the type of liability that any other party to a contract would face.

For these reasons, I would affirm the decision of the district court and hold that Shelton stated a claim for breach of contract upon which relief can be granted. As the majority correctly notes, a claim arising *ex contractu* survives the death of the claimant. *Kloepfer v. Forch*, 32 Idaho 415, 418, 184 P. 477, 477 (1919). Accordingly, I dissent from the Court's determination that the action abated and the case should be remanded for dismissal.

---

Based upon the majority's statement that this is "not materially different from the standard applied in the legal malpractice claim," it appears that such an instruction would be appropriate.